P. C. PIXLEE *et al.*, Appellants, *v.* OSBORN AND WALKER, Respondents.

1. *Practice, civil — Supreme Court — Chancery — Instructions.*— In purely chancery proceedings, instructions given or refused below are disregarded by the Supreme Court.
2. *Lands and land titles— Vendor — Levy on interest of vendee for purchase money — Effect as to vendor.*— Where a vendor, under a judgment rendered in his favor for the purchase money of land, levies upon the interest of the vendee and purchases the same at the execution sale, he will stand just where he stood before; the vendee will be entitled to redeem and to have a conveyance upon the payment of the purchase money.

*Appeal from Clay Circuit Court.*

*Hardwick*, for appellants.

I. Pixlee having purchased Osborn's interest, had the same right of action. (26 Mo. 364.)

II. After the purchase by Pixlee, Osborn had no interest in the land subject to execution. (10 Mo. 398.)

III. The sale and purchase by Walker, relied on in the answer, was void because the vendor's lien cannot be enforced by a suit

*in personam.* Walker's suit should have been an action *in rem,* and Pixlee made the party defendant. That not being done, his proceedings left him where he commenced. (26 Mo. 364; 10 Mo. 398.)

*Vories & Vories,* and *McCarty, Routt,* and *D. C. Allen,* for respondents.

I. The sale of the 120 acres of land mentioned in the petition was an entirety, and made at one time, as alleged in Walker's answer, and was all included in the title bond, and is all subject to the unpaid part of the purchase money, represented by the two notes, which were rendered into judgments.

II. William Pixley, deceased, only acquired the interest of Henry H. Osborn in the land by purchase, October 8, 1860, at marshal's sale, which interest was simply Osborn's equity of redemption in the lands, the lands being subject to the unpaid part of the purchase money.

III. The purchase money for the lands represented by the notes remains unpaid, and neither plaintiffs nor Osborn have made Walker a tender of the same, nor have they deposited it in court.

The legal consequences flowing from the foregoing acts are: (*a*) That plaintiffs have chosen the wrong remedy. They should have brought a bill to redeem, and tendered to Walker the unpaid purchase money. (*b*) That though the court below became possessed of the facts in the cause, through the pleadings and testimony, yet it was unable to render any judgment in favor of plaintiffs, in consequence of their failure to offer to perform Osborn's contract and pay the unpaid purchase money. (*c*) That plaintiff's petition had no equity in it, and the judgment of the Circuit Court in dismissing it was correct. (*d*) That the judgments of the Circuit Court being the right judgments upon all the facts, they should not be reversed for any errors in the course of the proceeding. (See Lumley v. Robinson, 26 Mo. 364; Parke v. Leewright, 20 Mo. 85; Delassus v. Poston, 19 Mo. 425; Newman v. Lawless, 6 Mo. 279.)

WAGNER, Judge, delivered the opinion of the court.

This was a petition asking for a decree of title to certain lands in Clay county. The plaintiff states, in substance, that one Osborn died seized and possessed of the land in controversy, and that after his death it was sold by proceedings in partition, and that Walker, one of the defendants, became the purchaser thereof; that the other defendant, Henry H. Osborn, was one of the distributees and entitled to a share of the proceeds arising from the sale on partition; that one Sheets was guardian of Henry H. when the sale took place, he being at the time a minor; that Walker contracted with Henry H. to let him have seventy acres of the land for the amount that was due him as his share on the partition sale; that the contract was made while he was an infant, but ratified when he became of age; that he took possession of the premises under this contract and made valuable improvements thereon; that the consideration was fully paid, and the said Henry H. was entitled to a deed therefor conveying the title in fee.

The petition further alleges that afterward or about that time, Henry H. contracted with Walker for the remaining fifty acres, there being 120 acres in all, for which Walker gave him a title bond which would have entitled him to a deed had the purchase money been paid; that while Henry H. was holding the said land, one Nowlin obtained a judgment against him in April, 1860; that execution was issued thereon, and the plaintiff became the purchaser of the same in October, 1860.

The defendants appeared and filed separate answers to the petition. Henry H. Osborn admitted the statements of the petition and consented that judgment should go against him. Walker denied the allegations of the petition, and stated that when Osborn arrived at the age of twenty-one, which was in 1858, he (Walker) sold all the lands mentioned in the petition (120 acres) to him for the sum of $1,538.78, of which $729.18 was paid in cash; that Osborn gave his two notes for the remainder of the purchase money, stating therein what the consideration was; that at the time of receiving the notes he gave Osborn a title bond for

all of the land, 120 acres, wherein he bound himself to convey the land whenever the notes should be paid. He further states that he brought suit against Osborn on said notes in 1860, and recovered judgment, and that under executions issued on said judgment he purchased the land in controversy.

Upon a hearing of the case the court rendered a decree dismissing the petition, and gave judgment against the plaintiff for costs.

As this is purely a chancery proceeding, we pay no attention to instructions given or refused by the court. The only material witness introduced by the plaintiff was the defendant Osborn, who mainly supported the averments in the petition. He stated that the seventy acres of land was fully paid for, and that he was entitled to a deed to the same; that afterward he made a contract with Walker for the fifty acres, and gave his notes for the purchase money and received a title bond; that Colhoun wrote the title bond, and he did not think that both pieces of land were inserted in it. The bond was burned up and could not be produced. He had possession of the land till after Pixlee's purchase, when he put the latter in possession.

For the defendant, Alex. J. Colhoun was introduced and testified that he was circuit clerk; that in the year 1857 or 1858 James Walker and Henry H. Osborn came into his office and asked him to write a title bond. They stated that Walker had sold to Osborn a lot of land; he thinks they said the old Osborn farm; he wrote the title bond, which Walker signed, and the two notes, which Osborn signed. He thinks both of the tracts of land were described in the title bond.

The defendant Walker then being sworn, stated that he sold the two pieces of land described in the plaintiff's petition to Henry H. Osborn, at the time mentioned by Mr. Colhoun in his testimony. It was in the year 1858; Colhoun wrote the title bond. A part of the purchase money was paid by the distributive share of Henry H. Osborn in his father's estate, and was paid by Sheets just after the title bond was made; the balance was secured by the two notes, on which judgments were obtained. Both pieces of land were sold at the same sale. He refused to sell

the first piece of land to Osborn at the time he got possession of it, because he was not of age then, and could not make a binding contract. When he sold the land to Osborn he sold all to him; the whole was one single transaction. What was paid was paid as part purchase money on all, and the notes given were given as balance of purchase of all the land. The balance of the purchase money has never been paid.

It will be seen that there is a conflict in the evidence, and the material question is one of fact. The judgment and sale under which Pixlee purchased were prior in point of time to Walker's judgment and purchase; and if the seventy-acre lot was purchased first and entirely paid for, as contended by the plaintiff, then plaintiff's right to relief is unquestioned. But if the sale of both pieces of land was one entire transaction and the balance of the purchase money is due on both, a very different case is presented.

Where a vendor, under a judgment rendered in his favor for the purchase money of land, levies upon the interest of the vendee and purchases the same at the execution sale, he will stand just where he stood before; the vendee will be entitled to redeem and to have a conveyance upon the payment of the purchase money. (Delassus v. Poston, 19 Mo. 425; Lumley v. Robinson, 26 Mo. 364.)

Pixlee at the sale bought whatever interest Osborn had, and if Osborn could only obtain a title by paying the balance of the purchase money, then Pixlee is in no better situation.

The writings which passed between the parties, and which would furnish the best and most certain evidence of the contract and what passed, have unfortunately been destroyed. The two witnesses, Walker and Osborn, who were the contracting parties, flatly contradict each other. The evidence of Colhoun, then, seems to give a preponderating force to the side of the defendant. In a case like this, where the testimony is so nearly balanced, and where we cannot see the witnesses and have any personal knowledge of their credibility, we are bound to defer to a certain extent to the judgment of the court below, and presume that it decided

correctly. As the case is made out, the defendant mistook his remedy. He should have tendered the unpaid purchase money and then demanded a deed.

