CHAS. P. HESS, Attorney in Fact for ANNA JANE GLEASON et al., Appellant, v. ANNA SANDNER, Executrix of the Estate of FREDERICK SANDNER, Deceased, Respondent.

Kansas City Court of Appeals, March 4, 1918.

1. **JURISDICTION: Courts: Probate: Demands against Estates.** The Constitution and statutes give probate courts jurisdiction over the allowance of any demand against the estate of a deceased person, and this is broad enough to include demands of every nature whether legal or equitable.

2. ———: ———: ———: ———. Although a probate court has jurisdiction to allow demands of every nature whether legal or equitable, this does not mean that the probate court can be turned into a court of equity to establish the existence of a trust which is denied and the existence of which can be established, if at all, by a court of equity. The cases in which it is said that the probate court has jurisdiction of demands of every nature whether legal or equitable are where the estate had received the property of another, or of the claimant under circumstances which either in law or equity established the relation of debtor and creditor between them. But in a case where the claimant must first obtain equitable relief before he can claim to be a creditor or to have even an equitable right to any property of the estate, the adjudication of such prior equitable right is purely the function of a court of equity, and to permit a probate court to do this is not merely allowing it to make use of and apply equitable principles in the settlement of the *debts* of an estate, but it is authorizing it to exercise the jurisdiction of a court of equity which cannot be done.

Appeal from Macon Circuit Court.—*Hon. Vernon L. Drain*, Judge.

AFFIRMED.

*Nat M. Shelton, James Whitecotton* and *Lacy &
Shelton* for appellant.

*Andrew Field, Webb M. Rubey* and *Guthrie &
Franklin* for respondent.

TRIMBLE, J.—This was an action brought in the
probate court to establish a demand of $598 against
the estate of Frederick Sandner, deceased. The pro-
ceeding is in behalf of the widow and adult children of
Nicholas Sandner, deceased, who was a son of the
decedent Frederick Sandner. The estate contended
that the matter was cognizable only in a court of equity
and that for this reason the probate court had no juris-
diction. This contention was overruled and a hearing
of the case resulted in an allowance of the demand.
The estate appealed to the circuit court and there filed
a motion to dismiss on the ground that the probate
court had no jurisdiction and that none could be ac-
quired by the circuit court on appeal. This motion was
sustained and the cause dismissed. From which dis-
missal the case comes here on appeal.

In order that the nature of the action may appear,
a statement of the allegations in the petition is necessary.
It alleges that Frederick Sandner in his lifetime owned
280 acres of land and, wishing to dispose of and divide
the same among his children, he sold it to his son John
F. Sandner for $11,200 to be distributed between all of
his children, the children of his dead son Nicholas to
receive their father's share.

That on September 17, 1913, said Frederick Sandner
entered into a written contract with said John F.
Sandner which contract was set out *in haec verba*. The
contract thus pleaded and set up is signed by Frederick
Sandner and John F. Sandner. It states that the former
has this day conveyed to the latter the 280-acre farm,
describing it, and that the consideration is $11,200; that
the deed to said farm is deposited with the Rubey Trust
Company of Macon, Missouri, to be held in escrow until
March 1, 1914, at which time the Trust Company is

directed to deliver it to the grantee upon the payment by him to said Trust Company of $9351 to be immediately paid by it to the following persons and in the sums as follows:

> "To George B. Sandner ............ $1140.00
> To Jacob Sandner ................. 1568.00
> To Mrs. Katie Little .............. 1515.00
> To Pete Sandner .................. 1515.00
> To Miss Anna W. Sandner ......... 2315.00
> To *Frederick Sandner, the grantor,*.... 1298.00"

Said contract further states that Trust Company was not to deliver the deed until it had received the above amounts and that if the said John F. Sandner failed to pay the $9351 to the Trust Company on or before March 15, 1914, then the latter was to surrender the deed to the grantor or his legal representative. Then follows the signatures of the parties to the contract.

The petition then alleged that "it was the aim and intention of Frederick Sandner to divide the purchase money of said farm equally among his children and that in order to do so he took in consideration the various amounts advanced by him to each individual child, and, under the contract aforesaid, ordered the Rubey Trust Company to pay each of his children the sums designated in said contract, and on account of three of the children of Nicholas Sandner being minors and having no guardian, he, the said Frederick Sandner, made the amount due to the children of Nicholas Sandner to be paid to him, the said Frederick Sandner, by said Rubey Trust Company, to be paid by him to the children of said Nicholas Sandner."

The petition then alleged that the Trust Company fully complied with all the conditions of the contract and paid each party named therein the amount due "and did pay to Frederick Sandner the sum of twelve hundred and ninety-eight ($1298) dollars to be held in trust for children of Nicholas Sandner, deceased, to be paid to them by said Frederick Sandner."

The petition then alleged that "in compliance with said trust" said Frederick Sandner paid to the

widow of Nicholas Sandner, for the use of the three minor children of said Nicholas Sandner, the sum of $700 on October 14, 1914, "but made no further payment to any of the other children and plaintiffs in this cause."

The petition then charged that the defendant as executrix of said estate "took possession of said trust fund" and holds possession of the sum of $598 which is due to the adult children of Nicholas Sandner, wherefore judgment was prayed for this amount.

It has been frequently held that the Constitution and statutes of the State give probate courts jurisdiction over the allowance of *any demand* against the estates of deceased persons, and that this is broad enough to include "demands of what every nature whether legal or equitable." [Hammons v. Renfrow, 84 Mo. 332; Maginn v. Green, 67 Mo. App. 616; Hoffman v. Hoffman, 126 Mo. 486; Grimes v. Reynolds, 94 Mo. App. 576; Lietman v. Lietman, 149 Mo. 112; Jarboe v. Jarboe, 227 Mo. 59.] But it will be noticed that this phrase is used in reference to claims wherein there is the element of debtor and creditor between the estate and the claimant whether such debt arises in law or in equity. In other words the function of the probate court is to adjudicate and allow claims which, by virtue of either legal or equitable principles, can be regarded as a *debt* due the claimant and the latter can be viewed in the light of a *creditor* of the estate. And in the determination of these matters, as well as in the settlement and distribution of the estate, the probate court is fully vested with power to adopt and apply equitable principles. But this does not mean that a probate court can be turned into a court of equity and exercise the jurisdiction of such a court in behalf of a claimant who does not stand in the relation of a creditor to the estate but comes merely as the *cestui que trust* of a trust fund of which the decedent is alleged to be the trustee, and the existence of which is not conceded but which can be established, if at all, only by a court of equity. An examination of the facts in the cases herein above

cited will disclose that in every one of them the estate
had received the property of another or of the claimant
under circumstances which either in law or equity estab-
lished the relation of debtor and creditor between them.
For instance, in the Renfrow case a husband received
property from his wife under a contract, valid in equity,
that is was not to become his absolute property but
would remain hers or her minor children's. Thus, in
the application of equitable principles, it was manifest
that the relation of debtor and creditor existed which
the probate court could adjudicate and settle. The
Supreme Court say (184 Mo. 341) the case is "more in
the nature of an action at law, for money had and re-
ceived on the part of the estate for the use and benefit
of said children than an action or bill in chancery for
matters of purely equitable cognizance." In the Maginn
case the decedent had received money from Anna
Walsh to be lent out by him and the interest paid to her,
and at her death the principal was to be paid to her
daughter. Here again, the decedent's receipt of the
money created a relationship of debtor and creditor
and the demand presented against the estate was an
election to treat the estate as such. As said in Winn v.
Riley, "By electing to treat him (decedent) as a
debtor, the indebtedness although growing out of this
trust relationship became a money demand against his
estate over which the probate court had jurisdiction."
In the Hoffman case a husband by a marriage contract
agreed to keep only the income of all money he received
from his wife's property and to secure to her or her
heirs the principal thereof at his death. Here was an
*admitted* executed trust creating the relation of debtor
on the part of the decedent and his estate which the
probate court, in the application of equitable principles,
could adjudicate by merely ascertaining the amount of
money so received and allowing a demand for that
amount. In the Grimes case the subject of the demand
was a note given by the husband for money belonging to
his wife's separate estate. This was merely a demand for
money had and received. And so on in all the other cases.

The subject-matter of the claim was either property of another coming into the hands of the decedent, or the claim was based on contractual obligations of the deceased with another, whereby either in the application of equitable principles or of legal rules, the court could say the relation of debtor existed and afford relief by a mere judgment for a money demand.

But in the case at bar there is confessedly no relation of *debtor* on the part of the estate to the claimants. The estate has received no money belonging to them. The money sought to be recovered never became theirs either as a gift or as an executed voluntary trust. The most that can be said of the matter is that the decedent sold his farm and directed the Rubey Trust Company to collect the proceeds and pay it to various persons therein designated and pay the balance to himself. Nothing is said in the pleaded written contract about why the money directed to be paid to the grantor in the deed should be paid to him and the only reason for it is the very good one that it was his. Whatever he may have *intended* to do, it is certain that he never lost control over the money paid to him, and that although the contract put up with the Rubey Trust Company could be enforced by the grantee in the deed upon payment of the money required of him within the time specified, still, so far as the distribution of that money was concerned, the decedent Frederick Sandner, could have recalled that and directed the bank at any time before they paid it out to pay it all to him. So that, until the money was paid to the distributees, the matter was entirely voluntary and without consideration on the part of Mr. Sandner. Until then, what he had done did not amount to a gift because it was not completed by delivery, nor could it be considered a voluntary executed trust. And as the money paid to himself was his anyway, his receipt of it could not constitute him either in law or equity, a debtor in any sense to the claimants. He had never lost control of it or placed it beyond his power to recall. It could not be regarded as

a gift until completed by delivery nor could it be regarded as a voluntary trust because it was never executed as to the claimants herein. [Harris Banking Co. v. Miller, 190 Mo. 640; Brannock v. Magoon, 141 Mo. App. 316, 321.] So that the cause of action presented herein is not one wherein the relation of debtor and creditor exists upon which the probate court is asked to merely ascertain that fact and determine the amount due and allow it against the estate. But the situation is one wherein the claimants must first obtain equitable relief, if they are entitled to any at all, before they are in any position whatever to assert that the decedent was trustee of a fund of which they are the *cestui que trust;* and it is only by reason of that relation when established, if at all, and not through any relation of debtor and creditor, that they can proceed against the estate. The sole basis of any right in them whatever, (if they have any right), depends upon the establishment of a voluntary executed trust in personal property on the part of decedent in their behalf. And this must be done before they can successfully claim even an equitable right to any property of the estate. The adjudication of whether there was or was not a valid, voluntary, executed trust would seem to be *purely* the function of a court of equity, and if, by merely calling a claim a demand and filing it against the estate in the probate court, the latter can be given jurisdiction to adjudge and decree that such a trust was created and that the claimants are entitled to it as *cestui que trust,* then this is not merely permitting the probate court to make use of and apply equitable principles in the settlement of the *debts* of an estate, but it is authorizing it to *exercise the jurisdiction of a court of equity.* Under the facts of this case, as affirmatively disclosed by the pleadings, we are of the opinion that the action of the trial court was right. The judgment is, therefore, affirmed. All concur.