Ida McHENRY, also known as
Ida Winhelm, Respondent,

v.

Zona BROWN, Leonard F. Parks, Lydia Parks, Fred C. Schuepfer and Fred C. Schuepfer Investment and Realty Company, Appellants.

No. 50632.

Supreme Court of Missouri,

Division No. 2.

April 12, 1965.

Samuel Richeson, Dearing, Richeson, Weier & Roberts, Hillsboro, for respondent.

Larry J. Casey, Potosi, Earle B. Leadlove, St. Louis, for appellants.

PRITCHARD, Commissioner.

Arthur H. McHenry, also known as Archie H. Parks, from 1942 to the time of his accidental death, July 7, 1962, led a double marital life. The contest here is over the ownership of certain real and personal property standing in his name, and that of his first spouse, and is between his reputed second spouse, plaintiff, and his first spouse and two children as his heirs.

Plaintiff's claim is that on March 28, 1942, she married a man who had introduced himself to her as Arthur H. McHenry (and who represented himself as being single with no children) with whom she lived as wife and husband until his death. Thereafter, plaintiff learned for the first time that the true name of her supposed husband was Archie H. Parks; that he was married to defendant, Lydia Parks; and that he was the father of defendants Zona Brown and Leonard F. Parks. During the course of her supposed marriage to McHenry, plaintiff alleged that her funds (some $5,000.00), which she had prior to the marriage, and all her earnings were taken by him and placed (1) in an investment account with defendant, Fred C. Schuepfer Investment and Realty Company; (2) in a 200 acre Washington County farm, the title to which was caused by McHenry to be placed in a straw party; and (3) in certain motor vehicles, machinery and other personal property which were inventoried in the estate of Archie H. Parks, deceased.

Plaintiff prayed for judgment against the Schuepfer Company for the amount of the investment account held by it (Count VII, tried to a jury); for a decree quieting title to the 200 acre farm against defendants, Lydia Parks, Zona Brown, Leonard F. Parks and Fred C. Schuepfer, and declaring that plaintiff is the owner of such farm upon the theory of a constructive trust (Counts I and II); and for title and possession to certain described personal property located upon the 200 acre farm also upon the theory of a constructive trust (Count V). Counts I, II and V were tried to the court simultaneously with the submission of Count VII to the jury.

The jury returned a verdict for plaintiff against defendant, Schuepfer Company, for

$8,482.40. The court decreed title to the 200 acres of land and to the personal property to be in plaintiff. Plaintiff dismissed her Counts IV and VI, and the court found against her on Count III, and these counts are not in issue here. The court also decreed defendants Zona Brown and Lydia Parks take nothing on their counterclaims and dismissed same, which defendants say is error inasmuch as they say they dismissed such counterclaims in the chambers of the court prior to submission of the case to the jury. All of the defendants appeal from the judgment and decrees against them.

The investment account was alleged to be $8,000.00; the farm was appraised in the estate at $14,000.00; and the personal property was appraised in the estate at $7,601.00. The evidence showing how plaintiff was deceived and mulcted of her property by her supposed husband for over 17 years when they were living together is as follows:

Plaintiff testified that her maiden name was Ida Winheim and that she was born May 27, 1915. She first met a man who introduced himself to her as Arthur McHenry on February 6, 1941, at a dance. She thereafter kept company with him from that night on. McHenry always told her that he was single and had no family, which she believed. He told her he was 9 years older than she was (but she learned after his death he was 22 years older). She was married to him on March 28, 1942, by a Justice of the Peace in Salem, Arkansas. After the marriage she continued to use her own name on income tax papers for which she made a separate return at his request. Plaintiff and McHenry lived together as husband and wife at various places in St. Louis (city and county) until 1959 when both retired and moved to the 200 acre farm in Washington County (near Potosi and Caledonia). During all of this time the electric meter receipts, water bills and purchases for household use were made in the name of A. H. McHenry.

During the marriage to McHenry plaintiff acquired with her own money a small confectionery or delicatessen in St. Louis for $2,200, using her U. S. Savings bonds accumulated prior to 1942. She and McHenry operated the delicatessen until she sold it in May of 1949 for $5,000. McHenry took that money, plaintiff being ill at the time. She later went with McHenry to talk to Paul G. Tucker about purchasing t'.. farm, and she was then introduced to Tucker as Mrs. McHenry. The farm was purchased from Tucker for $5,500 on February 1, 1950, and McHenry told plaintiff that the farm was bought in both their names, and that the title would be held in their two names. The closing of the farm purchase was done by the Fred C. Schuepfe. Realty and Investment Company, and plaintiff had no knowledge that at that time Fred C. Schuepfer or his investment company was setting up a straw party to hold title to the property in order to keep it out of her name. (The deeds referred to in evidence, and the testimony of Schuepfer, all show that title from Tucker was transferred to one Fred Herchert, who, with his wife, gave back a deed of trust on the property securing a note for $7,500 to Schuepfer, called a "Protective Deed of Trust" customarily used in the St. Louis area when straw parties hold title to real estate. Fred Herchert and wife also gave a deed to Schuepfer in 1956 which was recorded. In 1950, the straw party, described as single, made a deed to Archie H. Parks and wife Lydia, which was held by Schuepfer in his office safe until 1963 when he mailed it to Mr. Larry Casey, counsel for Zona Brown, the administratrix. Mr. Casey caused the 1950 deed to be recorded.) Plaintiff testified further that she had never inspected the deed from Tucker, and never authorized anyone to transfer the title to the farm from the name of Herchert to Schuepfer or to Archie Parks and Lydia Parks, his wife, and that she had no knowledge thereof.

McHenry received injuries from a tractor accident from which he died two or three

days later on July 7, 1962. On the day of his death, plaintiff learned for the first time that McHenry was really Archie H. Parks and that he had a wife, Lydia Parks, and two children, Zona Brown and Leonard F. Parks, living. Subsequently she found in the tool shed on the farm a steel ammunition box which had papers in it belonging to deceased. Among them was a statement of the Fred C. Schuepfer Investment and Realty Company, "Int. from 10/15/59 to 4/15/60 at 6% on Principal Balance of $8,000.00, Interest $240.00." On October 13, 1959, plaintiff withdrew from her separately accumulated funds in the Southern Commercial and Savings Bank, by cashier's check, $7,020.18, payable to the Schuepfer Company, wherein it was deposited. The investment account there, according to the statement and the testimony of Schuepfer, was in the names of "Archie H. Parks or Ida Winheim." McHenry's name . was added to the Southern Commercial account on February 11, 1955, making it read, "Miss Ida Winheim or Arthur H. McHenry."

On June 25, 1957, plaintiff furnished another cashier's check to McHenry from her savings for $3,000.00 for the purchase of an automobile. Plaintiff also introduced evidence of her social security earnings from 1942 until 1959 (when she retired) showing a total of $26,148.68 earned. Her testimony was that McHenry got all of that money.

Among other papers in the ammunition box were licenses to motor vehicles: a 1957 Ford Ranchero pick-up registered in the name of A. H. McHenry, and a 1944 GMC truck registered in the name of A. H. Parks. Registration papers to a Hereford bull were in the name of A. H. McHenry. Receipts for a pump and a propane tank were in the name of A. H. McHenry, as was a farm soil test report. A purchase of a "Turbomatic" from Sears, Roebuck and Company was in the name of A. H. Parks, Rt. 1, Box 286, Potosi, Missouri, but the directions for delivery and installation thereof were to A. H. McHenry near Caledonia, Missouri. Plaintiff testified that McHenry always picked up the mail from the mail box, and had a habit of tearing off the addresses on magazines and papers received by him.

Guy McHenry testified that he was a first cousin of deceased, and had known him about 55 years. He knew his real name was Archie H. Parks and that he was living with plaintiff near Caledonia, and that Parks was going under the name of McHenry. During the time they were living together, McHenry (Parks) told him that when plaintiff was employed she gave him her checks. Guy McHenry never did say anything to plaintiff about deceased's name being actually Parks, and Archie Parks (McHenry) knew that Guy McHenry was aware of his previous marriage and family, and Guy supposed that was the reason Archie was going under the name of McHenry.

Mr. and Mrs. Paul G. Tucker, Arthur and Willard Rieffer, Robert Crow, Guy McHenry, Aaron Gamble, Mr. and Mrs. Bill Warden, Donald Warden (all residing in the neighborhood of the farm) and plaintiff all testified that McHenry introduced plaintiff as his wife. They did not know McHenry as Parks or that he had another wife and two children. Tucker testified that at the time they purchased the farm from him, McHenry told him the reason the closing was handled by the Schuepfer Company was that he was putting up stocks and bonds which he didn't want to cash in and the company was advancing him the money to buy the property. Tucker did not know of the straw party. The Rieffers bought cattle from McHenry, paying by check to him, one of which was so endorsed and also by the name of A. H. Parks, whom the Rieffers did not know. During the time after 1959 when plaintiff and McHenry moved to the farm, she worked with him in improving the residence and a small tenant house, the barn, and in caring for the cattle. She also did all of the housework, cooking and gardening on the farm.

Before retirement, McHenry worked at the American Car Foundry and plaintiff testified that she tried to telephone him there under the name of A. H. McHenry and was told there was no one there by that name. When she questioned McHenry about it, he answered that he was probably out when she called, so she never investigated the matter further.

When they were operating the confectionery business, plaintiff and McHenry had a joint account in the Bank of St. Louis, wherein they accumulated money which was used to buy part of the livestock, machinery and other property which are listed in the inventory of deceased's estate. The remainder of the property was purchased from the salary earnings of both of them. From her earnings and property which she had before or during the marriage, plaintiff testified that she had nothing.

For defendants, Charles D. Holub, Employment Manager of the American Car and Foundry Company, testified that he knew deceased as Archie H. Parks. That from 1942 through 1959, Parks earned with that company $101,275.33, and he retired in September, 1959, at the age of 66. Parks then started drawing retirement benefits of $157.00 per month plus free insurance (a $7,680.00 insurance benefit was paid to Lydia Parks, the named beneficiary in the policy).

Larry Casey, attorney for the administratrix, testified that she requested mail addressed to deceased to be delivered to him. Among these papers were magazines addressed to A. H. Parks, Route 1, Box 286, Potosi, Missouri, and an Ark-Mo Power electric bill dated February 21, 1963, addressed to A. H. Parks and Ida McHenry at the same address. Mr. Casey did not know whether the meter billing was changed after the death of deceased. The administratrix took over in July, 1962.

Fred C. Schuepfer testified that he had been in the real estate business since 1929. He met the Parks family in 1942 when they purchased a home next door to his residence. He had never known deceased to use any other name than Parks, and he had never met plaintiff. He testified to various additions and withdrawals of the investment account by deceased. In answer to interrogatories he stated under oath on November 16, 1962, that his firm had an investment account, # 480, in the name of Archie H. Parks or Ida Winheim in the amount of $8,000.00. His testimony at the trial was that, by reason of withdrawals by Parks, $5,793.88 was all that was due. The investment account apparently began in 1946, when the Parks used his company to invest the net received by them in the sale of their home, and was continued by Parks to the date of his death. Parks asked him if he could hold the title to the farm because he didn't want to divulge it—which is common practice in real estate; and that Parks requested him to put the title in the name of Fred Herchert on February 24, 1950. In 1959, Parks entered into a loan purchase agreement with Schuepfer Company for $8,000.00, and paid for it in two checks, $7,020.18 and $979.82. Schuepfer testified that he had no knowledge of how the deed from the straw party, Herchert, to him was made or recorded in 1956, but that it was a serious error. He delivered the deed from Herchert, made in 1950 with grantees as Parks and his wife, to Casey after holding it 13 years.

Leonard F. Parks testified that his parents are Lydia E. and Archie H. Parks. He is a Colonel in the U. S. Army. While stationed in San Antonio, Texas, in 1959, Archie Parks and Lydia Parks visited him for three or four days. They did not come there together. Zona Brown testified that she is the daughter of Lydia and Archie Parks, and is administratrix of his estate. Her mother (Lydia) has lived with her since 1946, after which her father came and gave Lydia money, occasionally staying overnight. Archie H. Parks came by regularly, each year up to the time of his death, to have Lydia Parks sign the income tax returns.

Mrs. Lydia Parks, age 73, testified that she and Archie H. Parks were married November 22, 1916, and were never divorced. They lived together until 1946 when they sold their home. She then moved in with her daughter, Zona, and Archie told her he was going to live close to his work at American Car and Foundry Company. Parks gave her $60.00 a month to begin with and as time went on this was reduced to $100.00 every three months. After his retirement, Mrs. Parks got nothing from him by way of support. She never knew that her husband was living under the name of Arthur McHenry. She made inquiry of him about what he was doing and where he was spending his time, and he told her not to bother about him; that if she kept asking questions he would never come back.

No funds of Parks were found by defendants in any bank after his death.

Defendants' first point is that the trial court erred in denying their motion to dismiss plaintiff's petition because of her failure to file her claim against the estate of Archie Parks, deceased, which defendants say is required by § 473.367 (action considered a claim duly filed against the estate from the time of serving the original process on the executor or administrator, and filing written notice of institution of the action in the probate court) and § 473.360 (requiring written notice of actions instituted or revived under § 473.363 or § 473.-367 to be filed within nine months from the first published notice of letters). [Statutory references are to RSMo 1959, V.A.M.S.]

The allegations of Count VII of plaintiff's petition are to establish a constructive trust. They are that plaintiff earned money during the cohabitation which was deposited in the Southern Commercial and Savings Bank, and in the Fred C. Schuepfer Investment and Realty Company, to which she contributed and which had been unlawfully appropriated by Archie H. Parks, also known as Arthur H. McHenry. She prayed for a decree that she is the owner of all beneficial interest in these accounts. Counts

I, II and V, read together with adopted initial factual allegations of her petition, are also for the establishment of a constructive trust. Plaintiff did not plead her case upon the theory that deceased owed her money, an obligation due from his estate.

█ Although the parties and the trial court apparently treated Count VII (for the investment account) as an action at law, no allegations of such an action are stated. If it were an action at law, as for debt owed by deceased, defendants' point that §§ 473.-360 and 473.367 barred the claim would be well taken because that claim was not filed in the probate court. We deem that Count VII and all other counts of the petition are ones for the enforcement of a constructive trust of property purchased and an account established from moneys procured from the plaintiff by fraud. It was therefore erroneous to submit Count VII to the jury. In such case we disregard the submission, except insofar as the verdict may be advisory. Northrip v. Burge, 255 Mo. 641, 164 S.W. 584, 590 [8, 9]; and Blood v. Sovereign Camp W.O.W., 140 Mo.App. 526, 120 S.W. 700, 704. Considering all of the evidence we make our own independent finding, in nature de novo. Civil Rule 73.01(d), V.A. M.R.; Four-Three-O-Six Duncan Corp. v. Security Trust Co., Mo., 372 S.W.2d 16, 17 [1].

█ The claims in all of the submitted counts of the petition are in effect that deceased had in his possession certain properties belonging to plaintiff and not belonging to him, and which were not a part of his estate and to establish a trust thereof. In addition, plaintiff asks that title be quieted to her interest in the real estate as found. In that situation jurisdiction to hear all the claims was in the circuit court, and plaintiff was not required to file a copy of her claims in the probate court within nine months from the notice of letters of administration. Orr v. St. Louis Union Trust Co., 291 Mo. 383, 236 S.W. 642, 649 [8]; Hess v. Sandner, 198 Mo.App. 636, 198

S.W. 1125, 1126, et seq.; Strumberg v. Mercantile Trust Company, Mo., 367 S.W. 2d 535, 538 [3–5]. Point I is overruled.

■ Point II, in part, is that the trial court erred in giving Instruction No. 2 to the jury upon Count VII. This being a suit in equity, as we have held above, the instruction has no proper place in the case and is to be disregarded. Pixlee v. Osborn, 48 Mo. 313; Baker v. Satterfield, 43 Mo. App. 591; Baker v. Payne, Mo.App., 198 S.W. 75, 76 [5]. Other portions of Point II relate to the propriety of a judgment for interest upon Count VII of the petition; and an allegation of error in failing to reduce the judgment thereon, and the sufficiency of the evidence to support the decree on Count VII.

■ It was clearly and unequivocally established by plaintiff that on October 13, 1959, she withdrew from her separate funds $7,020.18 for which she received a cashier's check made payable to the Schuepfer Company, and which was deposited therein by deceased. The account was placed in the names "Miss Ida Winheim or Archie H. Parks." [We note that such account would not create a joint tenancy to which plaintiff would be entitled by right of survivorship. Compare Longacre v. Knowles, Mo., 333 S.W.2d 67.] Plaintiff's evidence did not show specifically (as is required, see 90 C.J.S. Trusts §§ 436, 437, p. 839, et seq.) that the other check, $979.82, was any of her money, and the record is silent as to its source other than that deceased had a check for that amount. Defendant Schuepfer complains that the court erred in not reducing the principal amount of this item (the verdict) to $5,793.88, which his testimony at the trial indicated was all that was due in the account by reason of withdrawals by deceased from the original $8,000.00 deposited. Interrogatories addressed to Schuepfer Company were answered by defendant Schuepfer that the account at the time of deceased's death was $8,000.00. Apparently the jury, in its advisory capacity, rejected Schuepfer's trial contention. The court overruled the allegation of error in the motion for new trial that the judgment against Schuepfer Company should be reduced and entered judgment upon the jury's verdict. With respect to the weight and credibility to be accorded Schuepfer's testimony, we defer to the jury in its advisory capacity and the court below before whom the witness testified. We remark, in passing, that it is probable that the solemn admission of the amount due ($8,000.00) in the answer to interrogatories on November 16, 1962, less than five months after deceased's death and when Schuepfer Company had ready access to its records, is of greater weight than the trial testimony of a lesser amount due.

■ Schuepfer Company also complains of the allowance of interest to plaintiff upon the account ($482.40 as fixed by the jury). In this it is correct, but only because plaintiff's evidence failed to show whether or not Schuepfer Company had in its possession any interest due on the account *to the trustee*, Archie H. Parks, deceased. In 90 C.J.S. Trusts § 338a, p. 583, it is said, "Where the trustee invests the trust funds, *he* is chargeable with the interest received, although the amount received is greater than the legal rate or the current rate of return on trust investments." At page 584 of 90 C.J.S. (Trusts § 338a) it is said, "In the case of a constructive or implied trust, the court, proceeding on equitable principles, may compensate those losing the use of their money by allowing interest. * * * Where a husband, as his wife's agent, uses her money in the purchase of real estate in his own name, interest is payable thereon *from his estate*." (Emphasis ours.) Plaintiff may have had a claim against her trustee or his estate for interest on her funds, but such fact would not render the investment company which held the trust funds liable for interest, unless it should be shown that the company was still holding the accrued interest at the time of suit.

■ We rule that plaintiff is entitled to judgment from defendant Schuepfer Company on the investment account for $7,020.-

18, but without interest thereon prior to the original judgment below, and that the other defendants have no interest therein by reason of a trust arising in plaintiff's favor.

█ Count I is for a constructive trust upon the 200 acre farm. Plaintiff's claim and the trial court's decree were that she is entitled to all interest in the farm upon that theory. The evidence is convincing to us that plaintiff turned over to deceased her $5,000.00 realized by her from the sale of her delicatessen business; that this money in part was used by deceased in the purchase of the farm. Deceased fraudulently represented to plaintiff that the title to the farm would be placed in both their names, but unknown to her he procured the title to be placed in a straw party to conceal it from her. Plaintiff having furnished a part of the purchase price of the farm, $5,000.00 of the $5,500.00 paid therefor, is entitled to an interest in the farm proportionately as the amount of the price furnished by her bears to the entire price on the theory of a constructive trust because of deceased's fraud. Davis v. Roberts, 365 Mo. 1195, 295 S.W.2d 152, 157 [10, 11]; Isenman v. Schwartz, Mo., 335 S.W.2d 112, 116 [2-7]; 90 C.J.S. Trusts § 190, p. 93; 89 C.J.S. Trusts § 122, p. 975.

█ Although there is evidence that both plaintiff and deceased worked and expended their funds for the improvement of the farm, there is no evidence of how much each contributed. Defendants do not plead or prove that deceased's funds went into the improvements, and absent such evidence a setoff, charge or lien upon plaintiff's interest in the farm could not be sustained. Plaintiff's interest in the farm attached at the instant title passed, 89 C.J.S. Trusts § 102e, p. 950, Davis v. Roberts, supra. She is entitled to any augmentation of her interest by reason of increase in market value of the farm since the time her interest attached. 90 C.J.S. Trusts § 438, p. 848. We hold that plaintiff has clearly established her right to ¹⁰⁄₁₁ths interest in the 200 acre farm. See the analogous constructive trust case, based upon a fraudulent marriage, Davis v. Cummins, Mo., 195 S.W. 752.

█ Plaintiff's testimony was that in June, 1957, she withdrew $3,000.00 more from her savings for the purchase of an automobile (the Ford Ranchero pick-up). The title to that vehicle was placed by deceased in his own name. Plaintiff is entitled to impress a trust thereon and to have the entire title decreed to be in her name. This, because she has definitely traced her funds to the automobile.

There are two aspects of plaintiff's case. The one is that she was able to trace her money into property acquired by deceased, as her trustee, and specifically and definitely identify that property: the farm, the investment account and the Ranchero automobile (for which she furnished $3,000.00, also from her separate savings, to purchase). These properties were distinguishable from other assets standing in deceased's name at the time of his death. The other aspect is that the money of plaintiff and that of deceased were commingled in a joint bank account. The money in the bank account, including plaintiff's and the earnings of plaintiff and deceased (who told his cousin Guy McHenry that he got plaintiff's salary checks), was used to purchase the livestock, machinery and other property listed in the inventory in deceased's estate, and the property which plaintiff's funds purchased, and the property deceased's funds purchased, if any, were commingled.

█ As we compute it, plaintiff's money was procured from her over the years in this manner: $5,000.00 on the farm; $7,020.18 in the investment account; and $3,000.00 for the purchase of the Ranchero, totalling $15,020.18. Plaintiff's earnings from 1942 to 1959 were $26,148.68, as established by her social security report. She had $2,200.00 in savings bonds prior to 1942. She used that money to purchase the delicatessen, and sold it in 1949 for $5,000.00. That is a total of $31,148.68 of

her funds all of which was gotten by deceased. Subtracting $15,020.18 (specifically traced money) from total funds leaves $16,128.50, which went into the other inventoried property. Plaintiff made no attempt to show what of her funds went to purchase any specific item of the commingled assets standing in the name of deceased. In this situation and under the facts of this case we hold that she was not required to perform the impossible task in making a specific identification of the changed trust funds and follow them precisely. Her testimony that her funds and deceased's funds (commingled) were used and went into the purchase of inventoried items (likewise commingled) is sufficient to establish her interest. "Where the trustee exchanges the mingled mass for other property, the beneficiary is entitled at his option either to claim a proportionate share of the product, or to enforce an equitable lien upon it to secure his claim for reimbursement." A.L.I., Restatement of the Law of Trusts, § 202h. See also Scott on Trusts, § 516; Bogert, Trusts and Trustees, § 923; 90 C.J.S. Trusts § 439b, p. 849. In this state the old rule that the beneficiary must specifically trace and identify commingled property purchased with trust funds has long been abrogated. The 1888 case of Snorgrass v. Moore, 30 Mo.App. 232, 239, cited Harrison v. Smith, 83 Mo. 210, as overruling Mills v. Post, 76 Mo. 426, and quoted National Bank v. Insurance Co., 104 U.S. 54, 26 L.Ed. 693, "'that as long as trust property can be traced and followed, the property into which it has been converted remains subject to the trust, and if a man mixes trust funds with his own money the whole will be treated as trust property except so far as he may be able to distinguish what is *his.*'" The writer of the opinion in Snorgrass, supra, went on to say (30 Mo.App. loc. cit. 240): "The idea I gather from these cases is, that if there be difficulty or impossibility in distinguishing or separating the money or funds, the misfortune is thrown on the party who has wrongfully mingled the prop-

erty. If there is no means of separation, the beneficiary of the fund will take the entire mass till he has satisfaction." Among subsequent Missouri cases affirming the Snorgrass rule are: Tufts v. Latshaw, 172 Mo. 359, 72 S.W. 679, 683; Orr v. St. Louis Union Trust Co., supra, loc. cit. 236 S.W. 649 [10]; Mann v. Bank of Greenfield, 329 Mo. 862, 46 S.W.2d 874, 875 [1, 2]; Moore v. First Nat. Bank, 154 Mo.App. 516, 135 S.W. 1005, 1006; Nelson v. McClean's Estate, 236 Mo.App. 718, 161 S.W.2d 676, 678. Upon the modern doctrine of following or tracing commingled trust funds see also Evangelical Synod of North America v. Schoeneich, 143 Mo. 652, 45 S.W. 647, 649, and Pundmann v. Schoeneich, 144 Mo. 149, 45 S.W. 1112, 1114.

In this case defendants made no effort to show the purchase price of any of the inventoried property, or to show that deceased's own funds went to purchase same or any part thereof. Plaintiff having established that $16,128.50 of her funds over the years went into the personalty on hand, to the extent of which she is entitled to enforce a constructive trust on all of the commingled property under the above cases and authority, defendants had the burden of going forward with the evidence to show what property was deceased's own. The remaining property of deceased, as inventoried, the record being silent as to what happened to deceased's earnings over the years, is subject to plaintiff's trust, and she is entitled to take the entire mass of inventoried personal property until she has satisfaction. Snorgrass v. Moore, supra.

■ Defendants also say that the court erred in entering judgment on the counterclaims of Zona Brown, administratrix, and Lydia Parks, when at the close of the evidence and in the court's chambers they voluntarily dismissed same. Although the record is silent as to the voluntary dismissal, the parties seem to agree that such did occur in the court's chambers. Defendants had a right voluntarily to dismiss their counterclaims under Civil Rules 67.01 and

67.04 before submission. After dismissal there was nothing before the court as to the counterclaims and it was error to include in the judgment entries that these defendants take nothing by their counterclaims and the same are dismissed.

The judgment and decree is affirmed except for the following modifications, for the entry of which the case is remanded: The judgment against defendant Fred C. Schuepfer Investment and Realty Company is reduced to $7,020.18, upon Count VII of the petition; a decree granting plaintiff a $10/11$ths interest, and defendants, Zona Brown, Leonard F. Parks and Lydia Parks a $1/11$th interest in the real estate in question shall be entered upon Count I of the petition; and that part of the decree granting judgment against defendants, Zona Brown, administratrix, and Lydia Parks on their counterclaims shall be set aside.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.