Graham W. McGOWAN, Mrs. Mary Virginia (McGowan) Moynahan, Robert Hale Mc-Gowan, and Mrs. Barbara Ann (McGowan) Fayette, Appellants,

v.

ST. LOUIS UNION TRUST COMPANY, a Corporation, of St. Louis, Missouri, Respondent.

No. 49393.

Supreme Court of Missouri,

Division No. 1.

July 8, 1963.

Spencer M. Thomas, James E. Godfrey, Thomas, Busse, Weiss, Cullen & Godfrey, St. Louis, Shea & Gardner, Washington, D. C., Alfred L. Scanlan, Washington, D. C., for appellants.

R. H. McRoberts, R. H. McRoberts, Jr., St. Louis, Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel, for respondent.

COIL, Commissioner.

This case has come on reassignment to the writer, not present when the case was presented orally but who thereafter listened to the recorded arguments.

Appellants sought to recover a money judgment (in excess of $15,000) against respondent for alleged breaches of trust. The trial chancellor entered a judgment dismissing the suit and this appeal ensued.

All the relevant facts were stipulated prior to trial and, other than varying constructions of, and differing inferences from, certain facts and exhibits, there is no dispute as to the facts.

On October 2, 1901, the only lineal descendants and heirs at law of Mr. and Mrs.

George S. Myers were their three adult and married daughters, Mildred (Mrs. John S. Cravens), Georgie (Mrs. Herbert Coppell), and Bob (Mrs. Graham E. Babcock), and one living grandson, George Myers Church, the son of Mrs. Coppell by her previous marriage to Mr. Church. On that date, October 2, 1901, Mr. Myers caused to be formed a Missouri corporation named "The Coppell-Cravens-Babcock Real Estate & Investment Company," and furnished the full amount of its capital, $100,000, to be represented by a thousand shares of $100 each, of which 991 shares were issued to Mr. Myers. The term of the corporation's existence was fixed at fifty years. On October 30, 1901, a 4-year-old child, Doris Dolan, was legally adopted by Mr. and Mrs. Graham E. Babcock. In January 1904, Mr. Myers executed and delivered to respondent, St. Louis Union Trust Company, a trust indenture, and the trust therein stated was accepted and thereafter administered by respondent. Under its terms and provisions Mr. Myers delivered to respondent as trustee 989 shares of Coppell-Cravens-Babcock Real Estate and Investment Company with instructions to hold said stock and vote it at all meetings of the corporation as directed in writing by Mr. Myers during his lifetime and, after his death, as directed in writing by a majority of the surviving beneficiaries of the trust, and during the existence of the corporation to collect the net income and dividends on the stock and to pay the same to "the beneficiaries hereinafter named as follows:

"To GEORGIE MYERS COPPELL, MILDRED MYERS CRAVENS, BOB TANSEY BABCOCK, daughters of the party of the first part, and GEORGE MYERS CHURCH, grandson of the party of the first part, during their joint lives, each the one-fourth part of such net income and dividends; the portion going to said grandson, shall, during his minority, be paid to the party of the first part, George S. Myers, and after his death to his guardian, and after said grandson becomes of age, to him directly.

"Upon the death either of said grandson or of either of said daughters of the party of the first part without a child or children, should any such death or deaths occur during the existence of said last named corporation, the share of the one so dying, in such net income and dividends, so above directed to be paid in equal portions, to said daughters and grandson, shall be paid in equal portions to the survivors or survivor of such daughters and grandson, or the whole thereof to the last survivor of such daughters and grandson, as the case may be; but should the said grandson or any of the said daughters of the party of the first part, die leaving a child or children hereafter born, surviving him or her, then all his or her rights so dying, to such net income and dividends, and to such survivorship, shall pass to and vest in his or her child or children, and be paid to such child or children of said grandson or of such daughter so dying, in equal parts, or to the guardians of such as are minors.

"When said Coppell-Cravens-Babcock Real Estate and Investment Company ceases to exist as a corporation, either by reason of the expiration of the time for which it is now organized, or previously, by reason of other causes, and upon the winding up of the affairs of said Company, then said trustee, as holder in trust as aforesaid, of said 989 shares of stock therein, shall collect and receive all the proportionate share of the assets of said last named company, to which said trustee may be by law entitled as such holder of said shares of stock, and shall turn over, transfer, assign, convey and deliver the whole or such assets of whatsoever nature or kind they may be, whether real or personal, to the said George Myers Church, or to his heirs should he be then deceased, then to be and become vested in him, the said George Myers Church, or in his heirs, absolutely, free from all trusts or conditions."

Mr. Myers died testate in 1910. From the time defendant accepted the trust, it paid the net income from and the dividends on the stock of the investment company in

equal shares to the four named beneficiaries until Mrs. Coppell died in July 1933, then in equal shares to the remaining three beneficiaries until Mrs. Babcock (who by then was Mrs. William Downey) died in March 1942, and thereafter in equal shares to the two remaining beneficiaries until Mrs. Cravens died in July 1943, and thereafter the entire amount of the income to the remaining beneficiary, settlor's grandson, George Myers Church, until the dissolution of the corporation on November 3, 1943. On November 2, 1943, Mr. Church executed a written direction to the trustee to vote the 989 shares of stock at a special meeting of the corporation to be held on that day in favor of and to do the things necessary to effect dissolution. In consequence thereof, an affidavit of dissolution was filed on November 3, 1943, and the corporation was dissolved. Whereupon, the trustee, in compliance with the provisions of the trust indenture, distributed and paid over the entire corpus of the trust estate (together with accrued and undistributed income) in an amount in excess of $3,300,000 to George M. Church.

After the death of Mrs. Coppell in July 1933, with no child surviving her other than George M. Church, her son by a previous marriage, certain questions arose as to the parties entitled to and the proportions in which they were entitled to the income from the trust estate and to determine that controversy, the trustee in the fall of 1933 instituted a suit in the Circuit Court of the City of St. Louis wherein Mrs. Cravens, Mrs. Babcock Downey, and George M. Church, the surviving beneficiaries named in the trust indenture, were defendants, as individuals and as representing all who might derive or claim to derive any title to the trust estate as heirs, devisees, alienees, donees, or grantees of the defendants or any of them. We shall refer to the 1933 suit in more detail hereinafter.

Sometime prior to 1929, Doris Babcock McGowan, the child who was adopted by Mr. and Mrs. Babcock in 1901, had married and, in 1933, lived with her husband and children in Burlington, Vermont. Mrs. McGowan was not a party to (except as her future rights and interests, if any, had to come to her from her mother who was a party) and did not participate in the 1933 suit. Mrs. Babcock Downey died in March 1942 and her only surviving child was her adopted daughter, Doris Babcock McGowan. The appellants are the four (all adults) children of Doris McGowan.

Mrs. Downey, formerly Mrs. Babcock, died testate March 5, 1942, while a resident of Bergen County, New Jersey, and in her will named her husband, William H. Downey, as her sole executor and as the residuary legatee of her estate. He filed the will on March 14 and qualified as executor, and letters testamentary were issued to him on March 17. Mrs. Downey's will bequeathed to her adopted daughter, Mrs. Doris McGowan (mother of the appellants), some jewelry and the sum of $50,000, and noted that other suitable provision had been made for her at the time of her marriage. On March 18, 1942, the day following the issuance of letters testamentary to Mr. Downey, Doris McGowan, through New York counsel, wrote to respondent trustee, indicating that she was under the impression that she had some interest in a "Coppell-Cravens-Babcock trust fund" and asked for a copy of any trust instrument and the trustee's opinion as to her interest therein. The trustee answered on March 20 indicating that its policy was not to give information concerning trust estates except to a beneficiary or a proper representative and that the records did not disclose Doris McGowan as a beneficiary or interested party in any trust, but also indicated that in one of their trusts were shares of stock in a corporation of a name similar to that mentioned by Doris McGowan. On April 23, 1942, the trustee again wrote Doris McGowan's New York counsel indicating that it had learned that Mrs. McGowan was the adopted daughter of Mr. and Mrs. Graham Babcock and that Mrs. Babcock was a beneficiary of a trust created by her father in 1904, and that with the consent of the

beneficiaries of the trust, the trustee enclosed a copy of the trust indenture; and the trustee further stated that it had been advised that Doris McGowan was adopted in San Diego, California, on October 30, 1901, at the age of four, and that the trustee had been advised by its counsel that Doris McGowan had no interest whatsoever in the trust created by George S. Myers which was then being administered by it as trustee; and the trustee asked Doris McGowan's counsel to check the facts and advise if they were not correctly stated. No reply to that letter was ever received by the trustee. Thereafter Doris McGowan, through her New York counsel, sought an opinion of Missouri counsel with respect to the validity of the trust indenture and, under date of July 13, 1942, obtained an opinion of St. Louis counsel to the effect that the trust instrument was void because it violated the rule against perpetuities and because the instrument did not carry out the intent and purpose of the settlor. The fact of the request for or the existence of such an opinion was unknown to defendant trustee until 1957.

Following receipt of the July 13 opinion and on August 17, 1942, Doris McGowan appealed from the probate of her mother's will and, about four months later on December 9, 1942, executed an instrument agreeing to discontinue said appeal in consideration of the payment to her of $11,000 and some jewelry in addition to the jewelry specifically bequeathed to her and in addition to the $50,000 bequest to her in her mother's will. Thereafter, on March 11, 1943, Doris McGowan executed a release and refunding bond releasing and discharging William Downey from all claims and demands on account of the estate of his wife, Bob Myers Babcock Downey, and of Doris McGowan's interest therein.

On the preceding February 4, 1943, Doris McGowan addressed a letter to George M. Church (the settlor's grandson and sole surviving beneficiary named in the trust indenture) in which, among other things, she stated that she could not conscientiously proceed "with what I propose to do, without first telling you, my ideas and the justice of my cause" and then described what she proposed to do in these words:

"Therefore, if I am not considered a legal heir in so far as the Trust Fund is concerned, I contemplate bringing action to construe the Trust deeds—so as to establish my right to the income from the Trust Fund, during the life of the Trust which was previously paid to my mother.

"I have been advised by my council that I am entitled to this income that mother received, but the Trustees do not agree. Therefore, by taking this view, there is nothing left for me to do, but bring action to get a construction of the Trust deed. This, I hated to do without letting you know, personally—in advance.

"I wish you would write and let me know your opinion in the matter."

Mr. Church answered that letter under date of February 18, 1943, by advising Doris McGowan, inter alia, that in his opinion she was not entitled to any part of the income of the trust because she was born prior to January 12, 1904.

On October 5, 1943, Mr. Downey, the husband and residuary legatee of Bob Myers Babcock Downey (the mother of Doris McGowan), executed an assignment in writing whereby he sold, transferred, and assigned to George M. Church all of his "rights, title and interest, if any, including those, if any, acquired under the will of Bob Myers Downey, deceased, in and to all of the assets and property of the Coppell-Cravens-Babcock Real Estate and Investment Company" and "also all such rights, title and interest, if any, in and to the stock of said Company held by ST. LOUIS UNION TRUST COMPANY" under the trust indenture of January 12, 1904.

It was specifically stipulated that during the entire period from the creation of the trust in 1904 until its termination and the distribution of the corpus and undistributed income to George M. Church on November

3, 1943, George S. Myers, the settlor, until his death in 1910, and all of the heirs of George S. Myers, including his daughter, Bob Myers Babcock Downey, through whom appellants claim, until her death on March 5, 1942, and including Doris Babcock McGowan, appellants' mother, and through whom appellants claim (after April 23, 1942, if not before) and until her death in 1945, had knowledge of the execution and delivery of the trust indenture and of the terms thereof and of the administration of the same by respondent and that during that time neither the settlor nor any of his heirs, including his daughter, Mrs. Babcock Downey, and Doris Babcock McGowan and the appellants, advised respondent that they questioned the validity of the trust created under the trust indenture, nor in any way challenged that trust prior to 1957; nor did any of such persons institute any action contesting the validity of the trust prior to the institution of the present suit in October 1958; but, on the contrary, Mrs. Babcock Downey accepted the benefits of the trust and the others above named remained silent and permitted defendant to administer the trust and distribute income thereunder and terminate it and distribute the corpus to George M. Church without protest of any kind.

Appellants in the first count of their petition sought an accounting and a judgment for one half the amount the trustee paid to George M. Church upon the dissolution of the corporation in November 1943. Their theory as we understand it is: that the trust indenture of 1904 established three separate trusts or perhaps three separable parts of one trust, to wit, a trust in the income, a trust in the corpus (i. e., in the shares of stock so long as they were held by the trustee) and a provision for a "gift over" to George M. Church or his heirs, either upon expiration of the time for which the corporation was then organized or when dissolution was voted by a majority of the surviving beneficiaries (which, as a practical matter, meant when and if George M. Church, the grandson,

was the sole surviving beneficiary); that the trust in the income was valid, the trust in the corpus (i. e., in the shares of stock so long as held by the trustee) was valid, but the portion of the trust indenture which provided for the "gift over" was void because in violation of the rule against perpetuities; that, consequently, when, on November 3, 1943, the trustee dissolved the corporation and gathered in or obtained the assets which the shares of stock represented, at that moment the defendant became the trustee of a resulting trust for the benefit of the surviving heirs of the settlor, viz., George M. Church and Doris B. McGowan, mother of appellants; and, therefore, the trustee, instead of paying all the assets priorly represented by the shares of stock to George M. Church, should have paid only one half the assets to Mr. Church and the other half to Doris McGowan.

■ Respondent trustee has asserted in its brief a number of defenses, any one of which it claims is decisive of appellants' claim as to count 1, including the contention that the "gift over" did not violate the rule against perpetuities and including the defenses of limitations, laches, and estoppel. The view we take of this part of the case makes it unnecessary and certainly unrewarding to examine all the conflicting contentions of the parties because, in our view, irrespective of all else, if the provisions of the trust instrument providing for the so-called "gift over" were void because in violation of the rule against perpetuities, a resulting trust in favor of the settlor and his heirs arose in 1904; and, if so, then under the undisputed facts as we have heretofore detailed them, appellants' grandmother, Mrs. Bob Myers Babcock Downey (settlor's daughter), devised and bequeathed any interest she had in said resulting trust as an heir of the settlor, to her husband, William Downey, and, further, appellants' mother, Doris McGowan, thereafter released William Downey of any claim or interest she had through her mother or otherwise in any such resulting trust as an heir of the settlor, and there-

after Mr. Downey assigned and conveyed all his interest in the assets of any such resulting trust to George M. Church. It is our further view that such a result must follow whether the "gift over" provisions of the trust (even if in violation of the rule against perpetuities, an assumption we make for the purposes of this case) voided the entire trust ab initio, as respondent contends (citing Lockridge v. Mace, 109 Mo. 162, 18 S.W. 1145, and subsequent cases), or whether, as appellants contend, this court "has never closed the door completely on the doctrine that the conveyor's preference, had he known of the voidity, should be given effect, and would in the proper kind of a case apply that doctrine," Wash. U.L.Q.1952 (Kroeger, The Effect of Violation of the Rule Against Perpetuities in Missouri) 297, 316, and that the present is "the proper kind of case" in which to apply the doctrine of partial validity. For as we see it, even if we applied the rule which, in effect, provides that when an interest is void in violation of the rule against perpetuities, the part of the document providing that interest is stricken and the other interests created by the instrument remain in effect just as though the language creating the void interest had never been written (unless, of course, the other interests fail under the principle of infectious invalidity), nevertheless, any resulting trust which arose by reason of the void provisions as to the gift over arose in 1904 and not in November 1943. That conclusion must be correct because here the settlor transferred property inter vivos upon a trust which, according to appellants, failed in part at the *outset* (as to the gift over because in violation of the rule against perpetuities) and, consequently, the trustee then (in 1904) held the corpus upon a resulting trust for the settlor and his heirs. See Scott on Trusts, 2d Ed., Vol. 4, § 411, pp. 2935, 2936, § 411.2, pp. 2938–2940; 89 C.J.S. Trusts § 103, p. 953; American Law of Property, Vol. 6, § 24.47, p. 123, Rest., Trusts, 2d, § 411, comment b, p. 333, comment g, p. 336, comments h and i, p. 337.

■ If we properly understand appellants, their contention that a violation of the rule against perpetuities occurred in November 1943 and not 1904 is based upon the theory that until the dissolution of the corporation, settlor's heirs held a "mere possibility of reverter" which became upon dissolution an estate which "vested in the heirs of the settlor then living." As we see it, that contention in turn must be based upon either or both these fallacious premises, first, that the corporation (through subsequent action by its shareholders) might have had perpetual existence and, second, that the trust provision requiring the trustee to dissolve the corporation and collect the assets represented by the shares of stock and pay over those assets to Church in some way differed in legal effect from a direction to the trustee to transfer to Church the actual shares of stock upon a given event or at a specific time. As indicated, our view is that neither premise is sound for these reasons.

It will be recalled that the investment company was incorporated in 1901 for a period of fifty years, so that, at the time of the creation of the trust, the corporation's life was forty-seven years. The trust indenture specifically provided that the last date upon which the remainder (i. e., the assets represented by the shares of stock) was to be paid to George M. Church or his heirs was on the date the corporation ceased to exist "by reason of the expiration of the time for which it is now organized." The fact that during the corporation's existence it became possible legally for the shareholders to give it perpetual existence is irrelevant to any question here. That is because, as noted, the trust indenture in effect provided against any increase in the corporation's period of existence, irrespective of the legal possibilities in that respect. Further, we reject as unsound appellants' apparent contention that there was a valid trust in the corpus so long as the trustee held title to the shares of stock, but that the moment

the trustee dissolved the corporation and gathered in the assets, the "gift over" provision of the trust thereupon became void. That is because the trust instrument made it clear that the *corpus* of the trust (whether the shares or the assets represented by those shares) was to be paid to George M. Church or his heirs at a definite time, either at the expiration of the corporation's stated life or when sooner voted, so that, as we see it, the contention that the trust in the "corpus" was valid so long as the trustee held title to the shares but became invalid the minute the corporation was dissolved is without substance.

◼ It follows, we repeat, that if the so-called "gift over" provision of the trust indenture was invalid because in violation of the rule against perpetuities, it was invalid from the outset, i. e., January 12, 1904, and on that date either the entire trust was void as respondent contends (if any provision of the trust violated the rule against perpetuities, which respondent denies), or, in any event, that part of the trust providing for the "gift over" was void as of January 12, 1904, and thus, in either event, from that date forward the trustee held the shares of stock and assets which those shares represented in trust for the settlor and his heirs.

It follows that the trial court correctly dismissed count 1.

Appellants in their count 3 (count 2 was dismissed by appellants prior to trial) sought a judgment for one third the trust income from March 5, 1942, the date of the death of Mrs. Babcock Downey, to July 1, 1943, and for one half of such income from July 2, 1943, the date of Mrs. Cravens' death, until September 29, 1945, the date of the death of their mother, Doris McGowan.

We have heretofore referred to the suit which was instituted by the trustee in July 1933 for directions pertaining to certain questions which had arisen with respect to the distribution of trust income. Be-

cause of the fact that appellants base their claim that their mother, Mrs. McGowan, was entitled to her mother's (Mrs. Downey's) share of the trust income from Mrs. Downey's death in 1942 until Mrs. McGowan's death in 1945, upon their construction of the court's judgment in that case, and because we hold for reasons to be stated that appellants' construction of the court's 1933 judgment is, under all the circumstances, an erroneous one, it is desirable that we review in some detail the pleadings, findings, and judgment in the 1933 suit.

It will be recalled that the named defendants in the 1933 suit were the three surviving beneficiaries named in the trust indenture, Mrs. Babcock Downey (through whom appellants claim), Mrs. Cravens and George M. Church, each as an individual and as representing all who might claim as heirs, devisees, alienees, donees or grantees through them. In its petition, the trustee set forth the substance of the terms of the trust which we have heretofore quoted, among which averments was the trust provision that should any one of the settlor's three daughters or his grandson (the beneficiaries named in the trust indenture) die leaving *a child or children born after the creation of the trust,* then such child's or grandchild's rights to the net income and dividends should vest in his or her child or children to be paid to them or their guardians in equal parts. The trustee alleged further that at the time of the execution of the trust Mrs. Coppell, Mrs. Cravens, and Mrs. Downey were the only living children of Mr. Myers, the settlor, and none of these then had any living children except Mrs. Coppell, who was the mother of Mr. Church; that since the creation of the trust no other grandchildren of settlor had been born and, consequently, that from the inception of the trust in 1904 to July 3, 1933, the three daughters and the grandson were each entitled to one fourth of the net income, and that on July 5 Mrs. Coppell died leaving no children other than George M. Church. The trustee then repeated the

provision of the trust to the effect that on the death of either the grandson or the said daughters without child, the share of the one so dying was to be paid in equal portions to the survivors of such daughters and grandson or the whole thereof to the last survivor of said daughters or said grandson, unless either of said daughters or grandson left *a child or children born after the execution of the conveyance* in trust in which event his or her share of the income should vest in his or her children.

The trustee further alleged that by reason of the foregoing, questions had arisen since Mrs. Coppell's death as to the parties entitled to and the proportions in which they were entitled to the income from the trust estate; that it was contended "on the one hand, that since the death of said Georgie Myers Coppell, Mildred Myers Cravens and Bob Myers Downey and George Myers Church have become entitled and will continue to be entitled to said net income from said trust estate, in equal shares. On the other hand, it has been contended that since the death of Georgie Myers Coppell on July 5, 1933 George Myers Church has become entitled to and is now entitled to and will continue to be entitled to one-half of said net income and Mildred Myers Cravens and Bob Myers Downey each to only one-fourth thereof. Again, it has been claimed that since July 5, 1933, by reason of the failure of said conveyance in trust to specifically dispose of the income formerly being paid to Georgie Myers Coppell, one-fourth of said net income should be accumulated in the hands of the trustee to pass with the corpus of the trust estate at the termination of the trust."

The trustee prayed that defendants be required to answer, stating their several claims "which they make or may make in their own right and also what are the claims which they severally or jointly make or may make as representatives of any person or persons who are not made parties hereto and who are parties hereto by rep-

resentation as to its duties in the premises."

Each of the three named defendants, i. e., Mildred Myers Cravens, Bob Myers Downey, and George Myers Church, filed identical entries of appearance and separate answers, in which each stated: "And this defendant represents to the Court that under a proper construction of said trust agreement, Exhibit A to said petition, this defendant, on the death of Georgie Myers Coppell on July 5, 1933, became entitled to and has since remained entitled to receive one-third of the income from the trust estate created by said trust agreement, Exhibit A to said petition.

"And this defendant further prays the Court to instruct the plaintiff, St. Louis Union Trust Company, as trustee under said trust agreement, that this defendant is now and has since July 5, 1933 been so entitled to one-third of the income from said trust estate, and that the income from said trust estate under the provisions of said trust agreement is to be paid to the defendants Mildred Myers Cravens, Bob Myers Downey and George Myers Church, in equal shares, so long as they continue to live and during the life of said trust, and, in the event of the death of any one of said defendants without child or children, the income shall thereafter be paid in equal parts to the survivors; and that in the event of the death of any of said defendants leaving a child or children, then the income thereafter during the life of said trust shall be paid in equal parts to the survivors of the defendants and to such child or children of said deceased defendants in equal parts."

The same lawyer represented each of said defendants and filed a memorandum brief on their behalf in which he pointed to the particular part of the trust agreement which provided, among other things, that "* * * but should the said grandson or any of the said daughters of the party of the first part, die leaving *a child*

*or children hereafter born,* surviving him or her, then all his or her rights so dying, to such net income and dividends, and to such survivorship, shall pass to and vest in his or her child or children," etc. (Our italics.) He further stated that since the death of Mrs. Coppell, one of the settlor's children and a beneficiary of the trust, who left surviving her only George M. Church, the "question involved herein is what disposition should be made of the one-fourth share of the income of this trust estate which has been heretofore going to Georgie S. Myers Coppell." And counsel said in that regard, "It might be possible to contend that this share should go to George Myers Church. However, a close reading of the instrument shows that it should go to only a child or children *hereafter born.* George Myers Church was born at the time the Trust Indenture was created *and this language was clearly used to exclude him,* although he was a grandson, being the son of Georgie S. Myers Coppell." (Last italics ours.) And further, said counsel, the settlor had "provided for any other grandchildren who might be *hereafter born* specifically. In case no other grandchildren were hereafter born he then specifically says that the income should be paid to the *survivors* or *survivor* of such daughters and grandson, or the whole thereof to the last survivor of such daughters and grandson, as the case may be. His intention, as clearly shown by the instrument, was for the four of them to share equally in the income of this Estate. If one died *without issue hereafter born,* then his or her share to be divided equally among the survivors." (Last italics ours.)

The court entered its findings and judgment on December 13, 1933. It specifically found that the trust indenture provided that at the death, during the existence of the trust, of the grandson or either of the daughters without *"child or children born after the creation of said trust,* the share of the one so dying should be paid in equal portions to the survivor or survivors," etc. (Our italics), and that should the grand-

son or either of the daughters die leaving *"a child or children born after the creation of said trust,* then all of such grand-son's or daughter's rights to such net income and dividends and to such survivorship should vest in his or her child or children," etc. (Our italics.)

The court further found that no children were born to George S. Myers *after the creation of the trust* and that no grandchildren of George S. Myers had been born *after the creation of the trust,* and the court made reference to that portion of the trust which provided that in the case of the death of a beneficiary not survived by a child or children *born after the execution of the trust,* the income was to go in equal portions to the survivors of the daughters or said grandson. The court further found that when Mrs. Coppell died on July 5, 1933, "she left surviving her *no child or children born after the execution of said conveyance in trust of January 12, 1904."* (Our italics.) It then referred to the construction which the trustee had put on the instrument to the effect that since the death of Mrs. Coppell, the two surviving daughters and the grandson were each to receive one third the income and recited the suggestions which had been made to the contrary.

The judgment immediately following the above-noted findings provided that since the death of Mrs. Coppell, the two surviving daughters and the surviving grandson were entitled to the net income and dividends in equal shares so long as they lived and the trust continued, and that upon the death of either of the three without a child or children surviving, his or her share should be paid in equal portions to the survivor or survivors and the whole of the income to the last survivor of the three "and that upon the death of either of said defendants *leaving a child or children,* then his or her share of said net income and dividends from said trust estate shall, during the life of said trust, vest in his or her *said child or children."* (Our italics.)

■■ It is apparent from the foregoing that the language of the trust indenture specifically provided that the only surviving child or children of the named benefici-. aries who were to share in the net income of the trust estate were *children born after the creation of the trust*. It is also abundantly clear that one of the two questions which was before the court for decision involved that very language. The stated question was whether the grandson, George M. Church, born prior to the date of the trust indenture and who survived his mother, Mrs. Coppell, was excluded from receiving the share of income which she had priorly received by the language of the trust indenture which provided that only *children born after the creation of the trust* should receive the share their parent had formerly received. It is true that neither the separate answers of defendants nor the judgment which followed the findings specifically referred to the surviving "child or children" who was or were to receive their parents' income as a "child or children" born after the creation of the trust. It seems to us, however, that when the judgment is construed in the "light of the situation of the court, what was before it, and the accompanying circumstances," and "in the light of the character and object of the proceeding culminating in the judgment," Jeans v. Jeans, Mo.App., 314 S.W.2d 922, 925, the court must have used the words "child or children" in the judgment to mean only "child or children" born after the creation of the trust, as was specifically provided in the trust instrument. Under the circumstances heretofore delineated, we are convinced that this judgment should be construed with reference to and in the light of the court's findings, 49 C.J.S., Judgments, § 439, p. 871, and should be read in connection with the entire record, 30 Am.Jur., Judgments, § 69, p. 213. The language of the judgment, considered in the light of the question before the court and in the light of the positions taken by defendants through their counsel as to the fact that the indenture's specific language excluded the settlor's grandchildren who were born prior to the execution of the trust instrument, and in the light of the court's findings, means, beyond peradventure of doubt, that the only surviving child or children who were to receive their respective parent's share of income were those who had been born after the creation of the trust.

Appellants' argument that the language of the judgment omitting any phrase characterizing the surviving "child or children" who were to receive their deceased parents' share of income as "hereafter born," was intentional and by design for the purpose of preventing the "trust in income" from violating the rule against perpetuities, seems to us to be based upon unjustified conjecture and surmise. We point out again that it is agreed that the settlor during his lifetime and all the beneficiaries, three daughters and a grandson (including the settlor's daughter through whom appellants claim), from January 1904 until (and after) the institution of the suit in July 1933, a period of more than 29 years, all had treated the "trust as a valid, binding and operative trust in the whole corpus of the trust estate, consisting of Nine Hundred Eighty-nine (989) shares of the capital stock of The Coppell-Cravens-Babcock Real Estate and Investment Company, and all dividends received therefrom, acted in reliance thereon, and accepted the benefits and the responsibilities intended to be conferred and imposed by the said trust, and in no manner or instance did either the defendant trustee, or the settlor, George S. Myers, during his lifetime, or either of the said four (4) beneficiaries of the said trust * * * challenge or contest either the validity, binding nature, or the terms of the said trust * * *."

In the light of the foregoing, no plausible reason occurs to us to support a surmise or conclusion that the trustee and the beneficiaries by the 1933 construction suit were attempting in some obscure and indirect way to have the "trust in income" construed so that it would not violate the rule against perpetuities (assuming for the

purposes of this case only that it did so) by causing the court to omit from the language of its judgment any "hereafter born" phrase as to surviving children.

Our view is that the 1933 judgment reasonably may not be construed to include a child in being in 1904 and, consequently, that the trial court correctly dismissed count 3 of appellants' petition.

Inasmuch as we have held that the trial court correctly dismissed both counts of appellants' petition, it follows that the judgment is affirmed.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.