Robert POLLOCK, Administrator of the
Estate of Nellie J. Pollock, Deceased,
Plaintiff-Respondent,

v.

Harold W. BROWN,
Defendant-Appellant.

No. 60024.

Supreme Court of Missouri,
En Banc.

July 24, 1978.

Amended Opinion Sept. 12, 1978.

Wendell E. Koerner, Jr., Brown, Douglas & Brown, St. Joseph, for defendant-appellant.

Robert B. Randolph, St. Joseph, for plaintiff-respondent.

FINCH, Judge.

This is an action in six counts commenced by Nellie J. Pollock (plaintiff)[1] against Harold W. Brown (defendant). After judgment for plaintiff on all counts except Count III, defendant appealed to the Missouri Court of Appeals, Kansas City District, which affirmed. On application of defendant, we ordered the case transferred and we now decide it as though here on direct appeal.

The case is written on recent reassignment. In drafting this opinion, the writer has utilized much of what was written in the prior proposed opinion, particularly with reference to the $20,000 transaction and the deed transaction.

In Count I plaintiff sought to recover $20,000 allegedly loaned to defendant and payable on demand. Count II sought to replevy a $5,000 certificate of deposit, issued in names of "Nellie J. Pollock or Harold W. Brown, Joint owners with right of survivorship," allegedly left with defendant for safekeeping while plaintiff was in Europe, which defendant refused to return to her on demand.[2] Count III asked for damages for loss of use of the $20,000 sought in Count I and loss of use and income of the $5,000 sought in Count II. Count IV sought punitive damages for wrongful refusal to return the $5,000 certificate. Count V sought to set aside a deed by which she had conveyed land on which her home was located to Nellie J. Pollock and Harold W. Brown. Count VI alleged that the $20,000 loaned (Count I) was used to purchase twenty $1,000 certificates of deposit in the names of Harold W. Brown

and/or Milton V. Brown, defendant's son, and that she should be awarded a constructive trust covering said certificates.

Defendant filed an answer to each count of plaintiff's petition and a counterclaim. His answer was, in effect, a general denial. In his counterclaim he alleged, in substance: (1) that plaintiff gave him an interest as a joint tenant in the $5,000 savings certificate; (2) that the $20,000 sued for was a gift to be used by him for the following purposes: (a) to provide himself with interest income for his support; (b) to provide himself with $10,000 of the principal when needed to cover expenses of himself for private nursing care during old age; and (c) to provide $10,000 of the principal for a trust fund to be used by him, as trustee, to pay expenses of nursing home care of plaintiff, if necessary; and (3) that he, as a joint tenant, is the owner of an interest in the real estate described in the pleadings.

The findings of fact and conclusions of law made and filed by the trial court are as follows:

"The Court finds that plaintiff Nellie Pollock is 71 years old and childish and forgetful and has been for several years but is not incompetent according to the definition set out in *Sehr v. Lindenmann [Lindemann]* [153 Mo. 276], 54 S.W. 537. Defendant Harold Brown is almost as childish as plaintiff, although somewhat shrewder. Plaintiff and defendant have been close friends for many years. Plaintiff has been better off financially than defendant. Defendant on occasion has asked plaintiff to give him the interest on some of her money and told her how honest he was. Plaintiff was in the hospital in June of 1972, and when she got out she began to plan a trip to Europe in October with defendant's daughter-in-law.

"On Counts II and IV, the Court finds that in May of 1972, plaintiff purchased a

---

1. Mrs. Pollock died January 8, 1976, after appeal had been perfected to the Court of Appeals, Kansas City District. The administrator of her estate was substituted as party plaintiff in that court. We will continue to refer to the parties by their designation in the trial court.

2. Plaintiff sought in this count only the possession of the savings certificate. She did not seek a determination, as between herself and defendant, of their respective rights to or interests in the money deposited in this account. Hence, we do not reach that question.

five thousand dollar certificate of deposit with her funds, which she made out in her name and that of the defendant as joint tenants. She never delivered it to the defendant. She intended for the defendant to have the certificate when she died but not before. Plaintiff placed this certificate, together with other personal effects, in an envelope and left it in defendant's custody to keep for her while she was gone on her trip to Europe. Defendant took possession of the certificate and did not give it back to her when she returned, although plaintiff demanded the return of the certificate, and defendant promised to do so and intended to do so until another man came into the picture. He never has and testifies now that he will not. Plaintiff never intended to make an out-right gift of this certificate of deposit, and there was no delivery of a present interest. The Court does not believe defendant's testimony that plaintiff · handed him the certificate and said, "here, I want you to have it." And that he simply said, "Why, thank you, Nellie, very much." The Court finds that defendant's action in taking possession of the five thousand dollar certificate of deposit and refusing to return it was wrongful and with legal malice. Plaintiff is therefore entitled to judgment for the return of the certificate and $575.00,[3] being the interest earned and payable since May 5, 1972. Plaintiff is entitled to punitive damages in the amount of $500.00. As to defendant's counterclaim, the Court finds and declares that plaintiff is the owner and entitled to possession of the certificate. See *Carroll v. Hahn* [Mo. App.] 498 S.W.2d 602.

"As to the twenty thousand dollars on Counts I and VI, the Court finds that on September 14, 1973, plaintiff attempted to make an oral trust of twenty thousand dollars; ten thousand to be used for her for nursing home expenses if needed, and ten thousand for the defendant for nursing home expenses for him if needed. There was no mention of what was to happen to the money if either or neither had to go to a nursing home. The money was to be put into certificates of deposit and was not to be in Milton Brown's name and defendant was to have the interest on the money. There was no intention on the part of the plaintiff to make a unilateral gift of ten thousand dollars to the defendant. The defendant, on September 18, purchased twenty $1,000.00 certificates of deposit in the name of Harold and/or Milton Brown, his son. Plaintiff demanded the return of the money, but defendant refused to do so until after the interest paying date and then refused to do so at all. The above transaction was too uncertain and indefinite to be declared a trust and amounted to no more than a loan of the use of the money to be repaid on demand. Further, however the transaction is characterized, the defendant breached the conditions thereof by putting the money in Milton's name, and plaintiff did all she could to revoke the transaction, and plaintiff is entitled to recover from the defendant $20,000.00 with interest at 6 per cent from September 18, 1973. As to defendant's counterclaim, the Court finds and declares that Milton Brown and Harold Brown have no lawful right or title in any of the twenty $1,000.00 certificates of deposit and that they are held in constructive trust for plaintiff Nellie Pollock.

"As to the deed to plaintiff's home, Count V, the Court finds that in August of 1972, plaintiff went to her own attorney, unaccompanied by the defendant, and executed a deed to her home place to herself and the defendant as joint tenants. The deed was recorded by her attorney and mailed to her. It was never delivered to the defendant. The deed was among plaintiff's effects left with the defendant when she went on her trip, and she showed the deed to the defendant and told him that she made him a survivor of it. It was returned to her when she returned. There was no confidential relationship between the plaintiff and defendant. Defendant never perpetrated any fraud on plaintiff, and defendant did not use undue influence on plaintiff.

---

**3.** This amount was subsequently stricken from the judgment by amendment on the court's own motion and by plaintiff's stipulation.

"Plaintiff, by Count V, seeks to have the deed to plaintiff's home set aside on the grounds of fraud, deceit and undue influence (not alleged but argued), which the Court has not found to have occurred. Defendant in his counterclaim has asked the Court to find and declare the parties' rights and interests in the property. The Court has considered two cases cited by the defendant similar to the one at bar: *Wilke [Wilkie] v. Elmore* [Mo.App.], 395 S.W.2d 168, where the grantor was found to have intended to deliver the deed; and *Shroyer v. Shroyer* [Mo.], 425 S.W.2d 214, where grantor was found not to have intended to deliver the deed. The distinguishing factors in the two cases is that in the *Wilke* case the deed was recorded and grantor reserved a life estate, and in the *Shroyer* case the deed was not recorded and grantor did not reserve a life estate. In this case the deed was recorded but it created an immediate interest and grantor did not reserve a life estate. The recording of the deed raised a presumption that the deed was delivered. This presumption is rebuttable. It does place on the plaintiff grantor the burden of proving the deed was not delivered to the defendant grantee. The question to be resolved is whether or not plaintiff parted with dominion over the deed with the intention of relinquishing all dominion and control over the deed and of making it presently effective and operative as a conveyance of title to the house. *Shroyer v. Shroyer, supra*, at 219.

"Considering all of the facts on this case; i. e., the relationship between the parties, the plans for the European trip, the fact that plaintiff told defendant that he was to be the survivor of it and that rather than giving the defendant title subject to a life estate, the deed made defendant a joint tenant in plaintiff's home, which is a present interest giving to the defendant the equal right to either possession or rent or to partition, the Court finds that plaintiff intended the defendant to have the house on her death and not before. She had no intention of parting with control and dominion over the property. In effect, she made a testamentary disposition of the

house, and as such she should be able to revoke it. She did what she could to revoke it by tearing up the deed. The fact that it was recorded should not prevent her from changing her mind.

"In view of the findings on Counts I, II and IV, plaintiff is not entitled to recover on Count III."

Our review of this court-tried case is pursuant to Rule 73.01(3) interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), to mean "that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong."

### THE $20,000 TRANSACTION

Was the $20,000 a loan, as plaintiff contends? Or was it, as defendant now contends, (1) a gift of $10,000 to him, and (2) a transfer of the remaining $10,000 to him in trust for these purposes: (a) the interest income to be paid to defendant for his support, and (b) the corpus of the trust to be used to pay any nursing home expenses Mrs. Pollock might incur? Defendant also contends, in the alternative, that if plaintiff intended to establish a trust in the whole $20,000, the court erred in not entering a decree that it was "a * * * trust during the lives of the parties with the income to be paid to the defendant, and a resulting trust in favor of the plaintiff."

■ The trial court found that plaintiff did not intend to make a gift of $10,000 of this money to defendant. This finding is supported by substantial evidence. Consequently, no property was transferred to defendant by inter vivos gift. *In re Estate of Hoffman*, 490 S.W.2d 98 (Mo.1973). The court further found and concluded that plaintiff attempted but failed to create an

oral trust with this $20,000 to be used by defendant for the following purposes: (1) to buy bank certificates of deposit in his name and thereby produce interest to be paid to himself as beneficiary; and (2) to use, if needed, (a) $10,000 of the corpus for nursing home expenses Mrs. Pollock might have, and (b) $10,000 of the corpus for nursing home expenses Mr. Brown might have.

The court found and concluded that the transaction between these two parties was too indefinite and uncertain to create a trust and, in particular, the trust attempted.

In *Northrip v. Burge,* 255 Mo. 641, 654, 164 S.W. 584, 586 (1914), this court said that "in order to create a valid verbal or parol trust in personal property, three things are indispensable; First, the words of the settlor must express a declaration and grant by him of an estate or interest containing all the essential elements of a trust; second, there must be a definite subject-matter of a trust; third, there must be a definite object or beneficiary of the trust." *Accord, Gardner v. Bernard,* 401 S.W.2d 415, 421 (Mo.1966).

With the exception of the words of plaintiff that she wanted defendant to have the interest earned by the $20,000 transferred to him, the words relied upon to express a declaration and grant by plaintiff of an interest containing all essential elements of a trust come from the mouth of defendant.

Defendant's testimony is consistent with (1) an intent on the part of plaintiff to make an absolute gift of $10,000 to defendant and a transfer of the other $10,000 to defendant in trust to use to pay such nursing home expenses as Mrs. Pollock might have; or (2) an intent to transfer the whole $20,000 to defendant in trust to pay the interest earned by the trust corpus to defendant and to use up to $10,000 of the corpus for such nursing care (or nursing home) expenses as he might have, and up to $10,000 for such nursing home expenses as Mrs. Pollock might have; or (3) an intent not to create a trust, but to give the whole $20,000 to defendant; or (4) an intent to create a trust in the whole $20,000 with the only use and purpose being to pay the interest earned by the trust corpus to defendant. In these circumstances, the words relied upon to express a declaration and grant of an interest with all the elements of a trust are, to say the least, ambiguous. The amount of the corpus of the trust, the identity of its beneficiary or beneficiaries, and the purposes for which it is to be used, are, as a result of the conflict between (1), (2), and (4) above, indefinite and uncertain. No provision is made by expression of the settlor (through defendant's testimony) for disposition of the corpus when the trust ends, if none of it is required to be used for the purposes expressed in (1) or (2) above, or if part, but not all, is required for use for those purposes.

If plaintiff's intent was as expressed in (4) above, then defendant contends, in the alternative, that the trial court should have decreed that it was "a * * * trust during the lives of the parties * * *," and erred in failing to do so. There is no evidence from any source as to how long a trust for this suggested purpose was intended to last, or what disposition was to be made of the corpus whenever the trust might terminate.

■ These uncertainties and ambiguities in the declaration of the nature and terms of the trust, in the description of its subject matter, in the designation of the purposes for which it is to be used, and in the designation of its beneficiaries demonstrate that the trust attempted failed because it is too vague and indefinite.

■ However, we do not agree with the trial court's conclusion that the transaction intended was a "loan" and that it was also an attempt to create a trust; the two are inconsistent. *Wheat v. Platte City Ben. Assessment Special Road Dist. of Platte County,* 227 Mo.App. 869, 59 S.W.2d 88 (1933); Restatement (Second) of Trusts § 12 (1959). Nor do we agree with its conclusion that because the trust attempted failed, this transaction "amounted to * * a loan of the use of the money to be repaid

on demand" for which she was entitled to a judgment for $20,000 and a decree that the twenty $1,000 certificates of deposit purchased with this "loan" are held by the payees named therein in a constructive trust for the benefit of plaintiff. In so concluding, the trial court erroneously declared and applied the law. The judgment on Count I is reversed. However, we reach substantially the same ultimate result on Count VI as was reached by the trial court, but upon a different legal theory.

We hold that because the attempted express trust failed, defendant held the $20,000 on a resulting trust for the benefit of plaintiff. The Restatement (Second) of Trusts § 65 B (1959) states that "a trust or a provision in the terms of the trust may be unenforceable because of indefiniteness." Comment a to this section declares that if the purposes for which the trust is created are too indefinite, then the trust fails. *See also* 89 C.J.S. *Trusts* § 45 (1955). Under these circumstances, " . . . transferee holds the trust estate upon a resulting trust for the transferor or his estate." Restatement (Second) of Trusts § 411 (1959). The above stated rule is applicable to these facts. *See Gill v. Gill,* 4 Ohio Misc. 141, 212 N.E.2d 83 (1965) (declaring attempted testamentary trust void for uncertainty, indefiniteness, and vagueness as to duration and in other respects, and ordering distribution to children who were decedent's only heirs); *McGowan v. St. Louis Union Trust Co.,* 369 S.W.2d 144 (Mo.1963) (if trust failed at outset because it violated the Rule against Perpetuities, trustee held corpus on resulting trust).

Defendant, as trustee of the resulting trust, breached his fiduciary duty[4] to protect the integrity and security of the trust corpus by using it to purchase certificates of deposit in the names of and payable to himself, in his individual capacity (not as trustee), "and/or Milton V. Brown," his son and a stranger to the trust. Access to the funds of the trust in his individual capacity results in unjust enrichment of defendant for his wrongful act. Equity will not tolerate his unjust enrichment. An explanation of this principle is found in *Murphy v. Olds,* 508 S.W.2d 249, 252 (Mo.App.1974):

"A constructive trust, however, is not a technical trust but a device used by a court of equity to provide a remedy in cases of actual or constructive fraud to prevent unjust enrichment. *March v. Gerstenschlager,* 436 S.W.2d 6, 8[2] (Mo. 1969); *Service Life Insurance Co. of Fort Worth v. Davis,* 466 S.W.2d 190, 196[4] (Mo.App.1971). And since a breach of a fiduciary or confidential relationship is itself a constructive fraud, if such a relationship is shown between the putative trustee and beneficiary, no proof of actual fraud is necessary in order to establish a constructive trust. *Swon v. Huddleston, supra,* l. c. 282 S.W.2d [18] at 25[9, 10]; *Trieseler v. Helmbacher,* 350 Mo. 807, 168 S.W.2d 1030, 1036[5–7] (1943). Thus, the availability to plaintiffs of the constructive trust remedy does not derive from an imputation of actual fraud, but from the breach of the fiduciary relationship which subsisted because [consistent with the principle of *Parker v. Blakeley* (338 Mo. 1189, 93 S.W.2d 981), *supra,* cited by defendants] 'to permit [defendants] to retain the property thus procured would tend to induce fraud and would be against public policy upon the true owner doing equity.' *Decker v. Fittge,* 365 Mo. 139, 276 S.W.2d 144, 150 (1955)."

*Accord, Ward Parkway Shops v. C. S. W. Consultants,* 542 S.W.2d 308, 313 (Mo.App. 1976).

Milton Brown paid no value for any property interest transferred to him by his father having the twenty $1,000 certificates of deposit issued in his and his son's name. Also, defendant informed his son by letter that he held the money in trust for plaintiff. Under these circumstances, Milton

---

4.  Restatement (Second) of Trusts, Introductory Note to Sections on Resulting Trusts at 326 (1959) declares that "the trustee of a resulting trust, like the trustee of an express trust, is in a fiduciary relation to the beneficiary." *See also McHenry v. Brown,* 388 S.W.2d 797 (Mo.1965) (constructive trustee accountable as express trustee).

Brown cannot hold free from trust any property interest in the account, or the certificates evidencing the account, which was created by his father in breach of his fiduciary duties. Restatement (Second) of Trusts §§ 289, 292 (1959).

Because of defendant's breach of his fiduciary obligations as trustee of the resulting trust, we hold plaintiff is entitled to a decree on Count VI that defendant and Milton V. Brown have no property interest in the twenty $1,000 certificates of deposit issued by the American National Bank or the money the certificates represent; and that they hold these certificates of deposit on constructive trust for the benefit of plaintiff and shall deliver them to the administrator of her estate. The decree on Count VI is modified accordingly.

## THE $5,000 SAVINGS CERTIFICATE

The trial court's findings of fact as to this certificate are supported by substantial evidence and we do not disturb those findings. We thus have a factual situation in which plaintiff purchased with her funds a $5,000 certificate of deposit which she had issued in her name and Harold Brown's name as joint tenants with right of survivorship. She retained the certificate which evidenced the funds deposited in the survivorship account, intending that Brown should not have the certificate unless and until he survived her. However, when she took a trip to Europe, she placed this certificate of deposit in an envelope and left it with Harold Brown for safekeeping during her trip. It was to be returned to her after she came back from Europe but, in spite of her requests, Brown refused to return the certificate.

■ By depositing her $5,000 in the bank in the names of and payable to herself and Harold Brown "as joint owners with right of survivorship," plaintiff established a statutory joint tenancy. *In re Estate of LaGarce*, 487 S.W.2d 493 (Mo. banc 1972).

In the words of the applicable statute,[5] such deposit becomes "the property of these persons as joint tenants, and * * * shall be held for the exclusive use of the persons so named, and may be paid to any of them, or to the survivor . . . ." In that case we recognized that prior cases had refused to recognize joint tenancies created under § 362.470 and what is now § 369.174 because of the absence of the common law elements essential to a valid gift inter vivos or because deemed void on the basis that the attempted gift was testamentary in nature (donor intended to retain control during lifetime) and thus in violation of the statute of wills. *LaGarce* held that prior cases so holding[6] had the effect of nullifying the legislative intent expressed in said statutes and should not thereafter be followed.

We reaffirm the holding in *LaGarce*. There was created a present statutory joint tenancy in the $5,000 account in the Commerce Bank of St. Joseph. However, plaintiff had a right to retain possession of the certificate of deposit which evidenced said account, thereby retaining control over the account by reason of the fact that surrender of the certificate was required for withdrawal of funds from the account. This is consistent with the holding in *LaGarce* which discussed possession and utilization of the certificate and the necessity that the certificate be surrendered if the account is to be terminated.

■ The trial court held that plaintiff delivered the certificate of deposit to defendant for safekeeping while she went to Europe with the understanding that it would be returned to her when she came back from her trip. In other words, there was a bailment of the certificate to defendant. When he refused to return it pursuant to plaintiff's request, he violated the terms of the bailment. It was on this theory that plaintiff sought by replevin to recover possession of the certificate of deposit.

---

5. Section 362.470, RSMo 1969. This section has been subsequently amended by Laws 1977, p. 554.

6. Including *Jenkins v. Meyer*, 380 S.W.2d 315 (Mo.1964); *Wantuck v. United Savings & Loan Assn.*, 461 S.W.2d 692 (Mo. banc 1971), and other cases.

There are cases which hold that a joint owner of personal property cannot maintain replevin to recover such property from another joint owner. *McDowell v. Hollingsworth,* 10 S.W.2d 314 (Mo.App.1928); *Farmers' Savings Bank v. American Trust Co.,* 196 S.W. 35 (Mo.App.1917). Those cases apply to conventional joint tenancies in personal property. In this instance we deal not with a conventional joint tenancy but with a specially created statutory joint tenancy. *LaGarce* so recognized when it stated that "the statute creates what might be described as a statutory joint tenancy." 487 S.W.2d at 500. As a result, each joint tenant has a present interest in the bank account. However, as *LaGarce* recognizes, one party may possess the certificate evidencing the deposit and this may be for the purpose of controlling the withdrawal of funds from the account, thereby effecting a testamentary disposition. Such being the case, the rule against permitting replevin by one joint tenant against another should not be applied to a situation involving such a certificate of deposit. This is particularly true where, as here, the holder of the certificate is a bailee who has breached a duty to surrender it to the bailor. This view is supported by the case of *Pulliam v. Burlingame,* 81 Mo. 111 (1883), wherein defendant borrowed two mules from plaintiff but refused to return them on request. When plaintiff sought to replevy the mules, defendant alleged that his wife owned an interest therein and he was in possession as agent for his wife. On that basis he asserted the rule that one joint owner of personal property may not maintain replevin against his joint tenant. The court rejected that contention, saying that defendant could not assert such a defense where he had acquired possession by a contract of bailment. The court stated that the bailee assumed a position of trust and confidence which continued until the property was returned or lawfully accounted for. The bailee could not dispute the bailor's title. The replevin action could be maintained against bailee of the mules. Likewise, plaintiff, as bailor of the certificate, was entitled to replevy it from the bailee when he refused to return it as he had agreed to do.

We conclude that the trial court properly permitted plaintiff to replevy the certificate of deposit for $5,000. The judgment on Count II is affirmed.[7]

Defendant also appeals from the action of the trial court in awarding punitive damages of $500 on Count IV in connection with his retention of possession of the $5,000 certificate of deposit. His argument is based on the proposition that there was no evidence that his retention of the certificate was wrongful and that retention of a certificate which shows him as a joint owner could not be wrongful and could not support an award of punitive damages. Although we reject these contentions, we have concluded that the findings of the trial court do not support an award of punitive damages in this case.

The trial court's award of punitive damages was based on its determination that "defendant's action in taking possession of the five thousand dollar certificate of deposit and refusing to return it was wrongful and with legal malice." This is a mixed question of law and fact. Although we must defer to the findings of the trial court where supported by substantial evidence, the determination that defendant's action in *taking possession* of the certificate was wrongful must be rejected. This finding is not only unsupported by the record but also is plainly inconsistent with the court's prior determination that defendant took possession of the certificate at plaintiff's request and with the intent to return it. It is on the basis of the bailment thereby created that we affirmed the order permitting replevin.

Inasmuch as there was a bailment, the finding of the trial court that defendant's *refusal to return* the certificate after de-

7. We decide only the right to possession as determined by the trial court. We recognize that Nellie Pollock is now deceased and that Harold Brown may claim the certificate and the deposit it represents as surviving joint tenant. We do not resolve that question by our affirmance of the trial court's judgment on Count II.

mand was wrongful is supported by substantial evidence. Punitive damages, if justified, must therefore be premised on this action.

■■■■ As previously indicated, the trial court concluded that the defendant's refusal to return the certificate was "with legal malice." In Missouri, actual malice, commonly defined as motivation by spite or ill will, is not a prerequisite to exemplary damages and legal malice, if supported by the evidence, will suffice. Comment, 42 Mo.L.Rev. 593, 598–600 (1977). As stated in *Beggs v. Universal C. I. T. Corporation,* 409 S.W.2d 719, 722 (Mo.1966),

> "The test to be applied in determining whether malice existed as a basis for the award of punitive damages is whether the defendant did a wrongful act intentionally and without just cause or excuse. 'This means that defendant not only intended to do the act which is ascertained to be wrongful but that he knew it was wrongful when he did it. There must be, in order to justify punitive damages, some element of wantonness or bad motive, but if one intentionally does a wrongful act and knows at the time that it is wrongful he does it wantonly and with a bad motive.' * * * "

■■■ Applying the foregoing test, we believe the trial court's conclusion that defendant acted with legal malice in this case is the result of an erroneous application of the law. The trial court made no finding that defendant knew his refusal to return the certificate was wrongful, nor do we believe that the record would justify such a finding. Defendant was in possession of a certificate which on its face declared his present interest therein. Although he had agreed to return the certificate, it is readily apparent that without benefit of this opinion he might in good faith have determined that his obligation to do so was more moral than legal. A good faith mistake as to the legality of the defendant's act has been held to negate legal malice under the foregoing test. *Booth v. Quality Dairy Company,* 393 S.W.2d 845 (Mo.App.1965); Comment, 42 Mo.L.Rev. 593 (1977). On the record before

us and in the absence of a finding that defendant knew he had a legal obligation to return the certificate, we believe the award of punitive damages is inappropriate. The judgment on Count IV is reversed.

## THE DEED TRANSACTION

[12] The trial court found and concluded that defendant did not secure this deed from plaintiff by practicing fraud, trickery and deceit upon her; that there was no confidential relationship between them and no undue influence by him upon her decision to deed the property to herself and defendant "as joint tenants and not as tenants in common." These findings and conclusions are supported by substantial evidence.

The only questions remaining are whether there was delivery and acceptance of the deed, mixed questions of law and fact. In this connection, the court further found as fact that "plaintiff went to her own attorney, unaccompanied by the defendant and executed a deed to her homeplace to herself and the defendant as joint tenants"; that "the deed was recorded by her attorney and mailed to her"; that the "deed was among plaintiff's effects left with the defendant when she went on her [European] trip, and she showed the deed to defendant and told him she made him survivor of it"; that the deed "was returned to her when she returned" from the trip. These findings, with one exception, are supported by substantial evidence. The exception is: that she "told him she made him survivor of it." There is evidence she showed him this deed, but none that she made such a statement about the deed or homeplace at any time.

The court was presented with similar questions in *Wilkie v. Elmore,* 395 S.W.2d 168 (Mo.1965), the answers to which are applicable to the facts in this case. The court said at 172:

> "Cancellation of a deed is the exercise of the most extraordinary power of a court of equity; such power should not be exercised except in clear cases upon proof which is clear, cogent and convincing, and the burden of such proof is on the party

**734**

who seeks the cancellation. *Cruwell v. Vaughn,* Mo., 353 S.W.2d 616, 624[1–4]. On the issue of whether there was a delivery of the deed, the burden of showing nondelivery rests upon plaintiff because she is the one who seeks to invalidate the deed upon that ground. *Cleary v. Cleary,* supra, 273 S.W.2d [340] l. c. 346[9]; *O'Mohundro v. Mattingly,* Mo., 353 S.W.2d 786, 792[1].

"It is not necessary that there be an actual manual delivery of a deed in order to accomplish an effective delivery, *Marshall v. Hartzfelt,* 98 Mo.App. 178, 71 S.W. 1061, 1062; *Hafford v. Smith,* Mo. App., 369 S.W.2d 290, 294[3] \* \* \*. Although recording of a deed, even by the grantor, does not in itself operate as a delivery of the deed, such recording as here creates a presumption or a prima facie case of delivery in view of our recording statute, Section 442.390, RSMo 1959, V.A.M.S. \* \* \*. The acceptance necessary to delivery and validation of the deed can be presumed where the transfer of an interest is beneficial to the defendant grantee as in this case. *Clark v. Skinner,* 334 Mo. 1190, 70 S.W.2d 1094, 1099[12]."

The court said in *Schroyer v. Schroyer,* 425 S.W.2d 214, 219–220 (Mo.1968): "It is not necessary, in order to constitute a delivery of a deed, that the instrument actually be handed over to the grantee or to another person for the grantee. There may be a delivery notwithstanding the deed remains in the custody of the grantor. *Baker v. Baker,* 363 Mo. 318, 251 S.W.2d 31, 33 A.L. R.2d 1431, and authorities cited l. c. 37."

▉ Under the facts and circumstances presented, including the recording of the deed, there was a strong presumption of delivery and acceptance of the deed. There is no clear, cogent and convincing evidence to rebut this presumption. Plaintiff failed to meet her burden of proof. Accordingly, the decree on Count V setting aside this deed is reversed.

In summary, we reverse on Count I, we affirm on Count II, we reverse on Count IV, we reverse on Count V and we affirm as modified on Count VI. The judgment of the trial court on Count III was for defendant and plaintiff did not appeal therefrom. Accordingly, it remains as entered in the trial court.

MORGAN, C. J., and BARDGETT, RENDLEN and SEILER, JJ., concur.

DONNELLY, J., concurs in part and dissents in part in separate opinion filed.

SIMEONE, J., not participating because not a member of the court when cause was submitted.

## OPINION CONCURRING IN PART AND DISSENTING IN PART

DONNELLY, Judge.

I concur in all of the principal opinion except the portion which pertains to replevin of the $5000 savings certificate.

In concluding there was no delivery to defendant of *a present interest* in the certificate and that plaintiff was the owner and entitled to possession thereof, the trial court erroneously declared and applied the law. *In re Estate of LaGarce,* 487 S.W.2d 493 (Mo. banc 1972).

The principal opinion concedes there was delivery of a present interest in the certificate but then dilutes *LaGarce* by holding that a bailment was created. It then cites *Pulliam v. Burlingame,* 81 Mo. 111 (1883) for the proposition that, in a bailment situation, the accepted rule that one joint owner of personal property cannot maintain an action of replevin against his joint tenant does not apply.

I understand *Pulliam* to hold that where defendant borrowed two mules from plaintiff, and at the time made no mention of any claim to them, he was estopped to claim them against plaintiff. Here, the parties were joint tenants and they both knew they were joint tenants. There is no estoppel here.

Plaintiff may not maintain the replevin action asserted in Count II or the action asserted in Count IV for punitive damages in connection with defendant's retention of possession of the $5000 savings certificate.

To the extent indicated, I respectfully dissent.

## ON MOTION TO AMEND OPINION
## PER CURIAM.

In a motion to amend the opinion herein, plaintiff alleges that failure of the opinion to make any statement about liability of defendant to plaintiff for interest on the $20,000 in certificates of deposit held on constructive trust for the benefit of plaintiff has created uncertainty as to whether defendant is liable for interest. Plaintiff is entitled to receive from defendant the interest which defendant has received on said certificates of deposit. *McHenry v. Brown,* 388 S.W.2d 797, 804 (Mo.1965). Our opinion is amended accordingly.

In view of the fact that the interest rate paid thereon changed at some time and this court does not have sufficient information to enable it to compute the amount of interest due, it is necessary that we remand the case to the circuit court for a determination thereof. Accordingly, our opinion is amended to reverse and remand this case with directions to enter a decree in accordance with the views herein expressed.

SIMEONE, J., not participating.